IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37241

| STATE OF IDAHO, | ) | 2011 Opinion No. 25 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 4, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| THERESA NORTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. John H. Bradbury, District Judge.

Judgment of conviction for arson in the first degree, conspiracy to commit arson in the first degree, and insurance fraud, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP, Boise for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

PERRY, Judge Pro Tem

Theresa Norton appeals from the judgment of conviction entered upon a jury verdict finding her guilty of arson in the first degree, Idaho Code §§ 18-802 and 18-204, conspiracy to commit arson in the first degree, I.C. §§ 18-802 and 18-1701, and insurance fraud, I.C. § 41-293(1)(a). We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In January 2009, Norton purchased a house in Pierce, Idaho, for $85,000. She obtained an insurance policy with Safeco, in the amount of $240,000 for the house; $180,000 for personal property; and $24,000 for outbuildings. At the time the house was purchased, Norton was living in Kamiah with her mother, three sons, and grandfather. Norton began remodeling the Pierce house, moved in some items, and planned to move in permanently in June of 2009 after her children finished school for the year.

1

On April 8, 2009, the Pierce Fire Department responded to a call that a fire had occurred at Norton's residence in Pierce. When the fire department entered the residence, they noticed a slashed couch in the living room area and concluded that the fire had started on a bed in the living area in the basement. Based upon the situation, the fire chief called the State Fire Marshal's Office. The fire marshal determined that the fire likely occurred the day before the fire department was called; that the fire started on the bed; that a plastic gas cap was found; that it was likely that an accelerant, such as gasoline, was used; that the smoke pattern indicated that the door at the top of the stairs leading into the basement was shut at the time of the fire; that the cover to the attic space had been removed; and that had the door not been shut, a flume effect would have likely occurred causing the house to be completely destroyed.

The fire marshal ruled out any possibilities of an accidental fire and concluded that the fire was intentionally set. Sergeant Mitchell Jared, of the Clearwater County Sheriff's Office, testified that he also responded and that when he arrived Norton told him that she suspected her husband, Daryl, had started the fire. Tracy Johnson, a special investigator with Safeco who investigates potential insurance fraud claims, testified that Norton advised Safeco immediately that she suspected her soon-to-be ex-husband as starting the fire. Johnson testified that Norton felt very strongly that Daryl had set the fire.

During the course of the investigation, Sergeant Jared interviewed Norton several times about her activities on April 7, 2009, the day investigators believed the fire started. Sergeant Jared also interviewed Jason Stacy, a friend of Norton's, who had helped her with some remodeling, as well as moving things into the Pierce house. Both Norton and Stacy insisted that Stacy was in Kamiah between 5:00 and 7:00 p.m., but witnesses placed him in Pierce at that time. After further interrogation, Stacy ultimately confessed to starting the fire at Norton's request.

Norton was arrested and charged with arson in the first degree, conspiracy to commit arson in the first degree, and insurance fraud. The jury convicted her on each charge. The district court imposed a unified sentence of five years, with one and one-half years determinate. Norton appeals.

2

## II.

## ANALYSIS

Norton raises eight issues on appeal. Five of those issues involve allegations of fundamental error. Specifically, she asserts that the State failed to provide notice of its intent to introduce other acts evidence pursuant to Idaho Rule of Evidence 404(b); that the State introduced large amounts of other acts evidence in violation of the Idaho Rules of Evidence; that the State introduced an interrogation transcript into evidence in violation of the Idaho Rules of Evidence; that the admission of a police officer's testimony regarding truthfulness violated her right to a fair trial; and that the prosecutor committed misconduct by introducing inadmissible evidence and by making improper opening and closing arguments. She also argues that the district court erred in denying, in part, her motion in limine, as well as in denying her motion for a mistrial. She further contends that the cumulative effect of all of the trial errors and prosecutorial misconduct requires reversal. We address each of these contentions in turn.

### A. Fundamental Error

The general rule in Idaho is that an appellate court will not consider an alleged error on appeal in the absence of a timely objection at trial. *State v. Thompson*, 132 Idaho 628, 634, 977 P.2d 890, 896 (1999). The Idaho Supreme Court recently explained the purpose of the contemporaneous objection requirement and why appellate courts generally do not consider alleged errors not preserved through an objection at trial, as follows:

> "This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them." *Puckett v. U.S.*, --- U.S. ----, ----, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266 (2009). Ordinarily, the trial court is in the best position to determine the relevant facts and to adjudicate the dispute. *Id.* "In the case of an actual or invited procedural error, the [trial] court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Id.* Furthermore, requiring a contemporaneous objection prevents the litigant from sandbagging the court, i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.*

*State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010).

"[W]hen an error has not been properly preserved for appeal through objection at trial, the appellate court's authority to remedy that error is strictly circumscribed to cases where the error results in the defendant being deprived of his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal." *Perry*, 150 Idaho at 224, 245 P.3d at 976. Such cases

3

invoke the doctrine of fundamental error, which is "grounded in a criminal defendant's due process right to a fair trial." *State v. Kelly*, 106 Idaho 268, 277, 678 P.2d 60, 69 (Ct. App. 1984). As such, the exception to the general rule that appellate courts will not consider alleged errors not preserved through an objection at trial arises in criminal cases where the appellant demonstrates fundamental error. *See State v. Adams*, 147 Idaho 857, 861, 216 P.3d 146, 150 (Ct. App. 2009). In order to raise a claim of fundamental error that may be considered for the first time on appeal:

> [T]he defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Perry*, 150 Idaho at 228, 245 P.3d at 980.

Norton claims that a number of evidentiary errors occurred at trial and that "a trial as infected with inadmissible evidence as this trial is not a fair trial." She argues that these errors violated her right to due process and, as such, constitute fundamental error that should be reviewed on appeal. Accordingly, Norton requests that this Court address over thirty alleged errors, address them again in the context of prosecutorial misconduct, and then classify them all as fundamental error such that they can be reviewed on appeal.

### 1. I.R.E. 404(b) claims

Norton lists approximately twenty-eight instances of alleged fundamental error contending that the State inappropriately introduced evidence of other crimes, wrongs, or acts in violation of I.R.E. 404(b). Norton contends that fundamental error applies in two ways to the evidence of other acts. First, she argues that the introduction of inadmissible evidence resulted in an unfair trial in violation of her state and federal constitutional rights to due process. Second, she claims that the introduction of such inadmissible evidence without notice, without limiting instructions, and for improper purposes constitutes prosecutorial misconduct. We conclude that Norton has failed to demonstrate that the introduction of the allegedly inadmissible evidence

4

violated "one or more of [her] unwaived constitutional rights."[1] *Perry*, 150 Idaho at 228, 245 P.3d at 980.

Norton identifies the constitutional violation at issue here as a violation of her due process right to a fair trial in a fair tribunal. In essence, Norton claims that the violation of an Idaho Rule of Evidence, specifically I.R.E. 404(b), amounts to a violation of her due process right to a fair trial in a fair tribunal. However, the requirements set forth in I.R.E. 404(b), regarding admissibility and notice, are not of constitutional import. Rather, they are required by a rule of evidence. Norton contends that not only did the challenged evidence violate I.R.E. 404(b), but that it was not relevant under I.R.E. 401 and, therefore, inadmissible under I.R.E. 402. She also contends that even if the evidence were relevant, it still should have been excluded pursuant to I.R.E. 403 because its probative value is substantially outweighed by the danger of unfair prejudice. The Court in *Perry* stated that "where . . . the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute . . . the 'fundamental error' doctrine is not invoked." *Perry*, 150 Idaho at 226, 245 P.3d at 978. The alleged errors raised on appeal here are all grounded in the Idaho Rules of Evidence. This Court will not entertain attempts to characterize alleged evidentiary errors, to which no objection was made at trial, as a due process violation of the right to a fair trial in a fair tribunal. "Appellate review of a claimed error to which no objection was made in the trial court on the basis that it constituted fundamental error is the exception, not the rule, and the fundamental error doctrine is not a mechanism for criminal defendants to obtain judicial review of every plausible claim of trial error." *Adams*, 147 Idaho at 861, 216 P.3d at 150.

---

[1] Norton raises three different claims regarding I.R.E. 404(b) evidence. First, she argues that all evidence of other bad acts should have been excluded because the State failed to provide notice under I.R.E. 404(b). Second, she argues that the large amount of bad acts evidence was admitted in violation of the Idaho Rules of Evidence and violated her right to a fair trial. Third, Norton contends that the prosecutor committed misconduct by failing to provide notice of I.R.E. 404(b) evidence, as well as by introducing large amounts of irrelevant and unfairly prejudicial evidence. While all of the claims are stated differently, they essentially involve the same contention, i.e. that the evidence should not have been admitted, and that admitting it violated Norton's right to a fair trial. Although we conclude that Norton has failed to establish fundamental error as to any of her I.R.E. 404(b) claims, Norton's prosecutorial misconduct claims will all be addressed below.

5

We also note that Norton provides little analysis for each of the alleged errors. Instead, she identifies several alleged errors, lumps them together, and attempts to argue that the admission of such a large amount of bad acts evidence resulted in a violation of her due process right to a fair trial. While she also argues cumulative error, her primary argument groups several of the alleged errors together. This Court will not pore through a trial transcript and evaluate each question and answer in order to determine whether there is objectionable material, let alone add them up and analyze them as a collective due process violation. As noted above, one of the purposes of the contemporaneous objection requirement is to avoid such a result. *See Perry*, 150 Idaho at 224, 245 P.3d at 976 (the limitation on appellate-court authority to address issues not objected to at trial "serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them," as the trial court is ordinarily "in the best position to determine the relevant facts and to adjudicate the dispute"). Norton has failed to establish a violation of one or more of her unwaived constitutional rights and, therefore, has not demonstrated fundamental error.[2]

Finally, we note that the Idaho Supreme Court, employing the pre-*Perry* definition of fundamental error, addressed a similar argument as that presented on appeal with respect to alleged I.R.E. 404(b) errors, in *State v. Cannady*, 137 Idaho 67, 44 P.3d 1122 (2002). The Court concluded that "[a]n abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his defense." *Id.* at 72-73, 44 P.3d at 1127-28. The Court rejected the invitation to address the issue because there was no objection and the admission of the evidence did not constitute fundamental error. *Id. See also State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995) (concluding that the defendant failed to object to the challenged evidence on the basis of I.R.E. 404(b) at trial and that the alleged error in admitting the testimony did not rise to the level of fundamental error); *State*

---

[2]     While we do not address the alleged errors on appeal, we also note that the majority of the errors presented in the briefing do not even implicate I.R.E. 404(b). For instance, Norton contends that much of the alleged other acts evidence was evidence of theft-like activities. She identifies this evidence as "failure to make mortgage payments; frivolous law suits; plans to short sell a house; attempts to sell Mr. Norton's property; taking money and property from Mr. Norton; lying regarding marital status on the deed to the Pierce house; and living solely on child support and social security disability." It is difficult to envision how evidence of trying to short sell a house implicates Norton's character in any way.

6

*v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App. 1997) (applying *Johnson* and concluding that where the defendant fails to object at trial under I.R.E. 404(b), the trial court's admission of the evidence does not rise to the level of fundamental error). Employing the new definition of fundamental error, as set forth in *Perry*, does not demand a different result and, therefore, we will not address the issue further.

### 2.      Statements on credibility

Norton contends that the admission of the investigating officer's testimony allegedly commenting on the truthfulness of other witnesses, i.e. Stacy and Norton, violated her due process right to a fair trial. She argues that because credibility determinations are for the jury to make, statements by one witness regarding the truthfulness of another witness are prohibited. She also asserts that admission of testimony from one witness as to whether another witness is telling the truth may violate the defendant's "fundamental right to a fair trial."

Norton challenges two statements made by the investigating officer, Sergeant Jared. With respect to the first statement, the prosecutor asked a question regarding the interrogation of Stacy. Jared testified immediately following Stacy's testimony, and the prosecutor's question referred to that previous testimony, as follows:

> [Prosecutor]: . . . . You indicated and we've heard some testimony about Jason Stacy, in essence, cracking and telling you the story -- the truth?
> [Jared]: Yes.
> [Prosecutor]: All right. Was that before or after the arrest of Theresa Norton?
> [Jared]: That was before.
> [Prosecutor]: And did she know -- at that time to your knowledge was she aware that Jason Stacy had cracked?
> [Jared]: No.
> [Prosecutor]: Did she continue to insist after her arrest that Jason Stacy was with her in Kamiah between 5:00 or 5:30 and 7:00 or 7:30 on April 7th?
> [Jared]: I believe so.

Norton argues that Jared's response of "Yes" was an affirmation that "Mr. Stacy was telling the truth when he said that he and Ms. Norton set the fire" and that it was prohibited testimony of one witness testifying about whether another witness is telling the truth. Even if we could make the inferential leap proposed by Norton that Jared's ambiguous response to an even more ambiguous question could somehow be read as a comment on Stacy's credibility, Norton

7

has not demonstrated that the statement violated one or more of her unwaived constitutional rights.

Norton contends, citing *State v. Johnson*, 119 Idaho 852, 810 P.2d 1138 (Ct. App. 1991), that Jared's statement constituted a statement by one witness as to whether another witness is telling the truth and that admission of the testimony may violate her "fundamental right to a fair trial." She argues, citing *Perry*, that the denial of a fair trial is a denial of due process as guaranteed by the state and federal constitutions. We first note that an appellant cannot simply cite to *Perry*, in one sentence, for the general proposition that the due process right to a fair trial in a fair tribunal has been violated, and then, in another sentence, bootstrap some alleged trial error to *Perry* in an attempt to establish a constitutional violation. Were we to allow such an approach, the first prong of *Perry* would always be satisfied and would, therefore, provide no limitation on the types of claims that could be raised under the fundamental error doctrine as all claims can be couched in terms of a constitutional violation. This is not consistent, however, with *Perry*'s statement that "contrary to the federal plain error rule, in Idaho a trial error that does not violate one or more of the defendant's constitutionally protected rights is not subject to reversal under the fundamental error doctrine." *Perry*, 150 Idaho at 226, 245 P.3d at 978.

We acknowledge, as did the Idaho Supreme Court, in *Perry*:

> that a question calling "for the opinion of one witness as to the truthfulness of another . . . is clearly an invasion of the province of the jury, who are the judges of the credibility of witnesses." *People v. Barnes*, 2 Idaho 148, 150, 9 P. 532, 533 (1886). Lay witnesses are not permitted to testify as to matters of credibility. *Reynolds v. State*, 126 Idaho 24, 30-31, 878 P.2d 198, 204-05 (Ct. App. 1994). Furthermore, we have held that "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *State v. Perry*, 139 Idaho 520, 525, 81 P.3d 1230, 1235 (2003) (quoting *U.S. v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999)).

*Perry*, 150 Idaho at 229, 245 P.3d at 981. However, questions regarding whether lay and/or expert opinion testimony constitutes impermissible vouching for the credibility of another witness are inherently evidentiary issues. We recognized as much in *State v. Aspeytia*, 130 Idaho 12, 936 P.2d 210 (Ct. App. 1997). In that case, the appellant argued that the trial court erred in allowing the testimony of two doctors, who testified that the victim had been sexually molested, because their opinions were not based upon physical evidence and therefore amounted to nothing

8

more than an impermissible vouching for the credibility of the victim. *Id.* at 14, 936 P.2d at 212. Having failed to object to the testimony at trial, Aspeytia argued, as Norton does here, that the admission of the testimony could be reviewed for fundamental error under *Johnson*, 119 Idaho 852, 810 P.2d 1138. We acknowledged "that there is a lack of clarity in the case law of this state as to whether the admission of evidence without objection at trial may ever be reviewed for fundamental error on appeal."[3] We concluded in that case that it was "unnecessary that we determine whether the fundamental error doctrine may be applied to evidentiary issues," addressing the admissibility of the evidence instead in the context of Aspeytia's ineffective assistance of counsel claim.[4] We now conclude that the admission of evidence without objection

---

[3]  We cited the following cases highlighting this lack of clarity:

> *Compare State v. Walters*, 120 Idaho 46, 59, 813 P.2d 857, 870 (1991) (Boyle, J., concurring) (holding that admission, without objection, of fire investigator's opinion, that the defendant was the person who started the fire was fundamental error); and *Johnson*, *supra*, (holding that physician's opinion, elicited without objection, that the victim had been sexually molested was fundamental error requiring reversal of the conviction), *with McAway*, 127 Idaho at 60-61, 896 P.2d at 968-69 (refusing to consider challenge to the admissibility of a videotape that was raised for the first time on appeal, the Court stating that an abuse of discretion in admitting evidence is a trial error and "does not go to the foundation of the case or take from the defendant a right which was essential to his defense"); *State v. Higgins*, 122 Idaho 590, 596, 836 P.2d 536, 542 (1992) (declining to consider an issue not presented to the trial court concerning expert testimony about the profile of a sex offender because "any error in admitting the testimony was not fundamental error, because it dealt with the admission of evidence and did not go to the foundation of the case or take from Higgins a right that was essential to his defense."); *and State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989) (holding that error in admitting expert opinion would not constitute fundamental error).

*Aspeytia*, 130 Idaho at 14-15, 936 P.2d at 212-213.

[4]  While the *Aspeytia* Court acknowledged a lack of clarity in the case law and thus declined to address the issue under fundamental error, we note that the two cases cited in *Aspeytia*, *Walters* and *Johnson*, for the proposition that the admission of evidence without objection may be reviewed for fundamental error on appeal, are certainly the minority. *Cf. Cannady*, 137 Idaho at 72-73, 44 P.3d at 1127-28 (see above); *State v. Gertsch*, 137 Idaho 387, 49 P.3d 392 (2002) (concluding that neither the presence of victim/witnesses during trial, nor the un-objected to testimony of an expert witness testifying regarding securities law and its application to the facts of the case, constituted fundamental error as it did not affect the

foundation or basis of the defendant's rights); *State v. Moore*, 131 Idaho 814, 965 P.2d 174 (1998) (concluding that the admission of the State's experts' testimony that the victim had been sexually abused would not be reviewed on appeal in light of the failure to object at trial, as the erroneous admission of expert testimony is not subject to a fundamental error analysis); *State v. Evans*, 129 Idaho 758, 932 P.2d 881 (1997) (concluding that the failure to object to the admissibility of an exhibit pursuant to I.R.E. 1006 precluded review of issue on appeal, as a trial court's abuse of discretion in admitting evidence does not constitute fundamental error); *State v. Davis*, 127 Idaho 62, 896 P.2d 970 (1995) (concluding that the social worker's testimony that the victim suffered from battered woman syndrome and post-traumatic stress disorder did not constitute fundamental error because admission of expert testimony is not fundamental error); *State v. McAway*, 127 Idaho 54, 60-61, 896 P.2d 962, 968-69 (see above); *State v. Fields*, 127 Idaho 904, 911, 908 P.2d 1211, 1218 (1995) (concluding that eyewitness identification of the defendant was not tainted by media publication of the defendant's photograph and that any prejudice that may have resulted from admission of the witnesses' identifications was speculative and did not rise to the level of fundamental error); *Johnson*, 126 Idaho at 896, 894 P.2d at 129 (see above); *State v. Babb*, 125 Idaho 934, 877 P.2d 905 (1994) (concluding that even if the trial court abused its discretion in admitting lay witness testimony concerning conduct indicating whether the victim was contemplating suicide, it was not fundamental error); *State v. Follinus*, 124 Idaho 26, 855 P.2d 863 (1993) (concluding that the use of telephone conversations recorded in violation of Washington state law was not a constitutional violation and did not require exclusion of the evidence, and that even if it were error, it was not fundamental error as it did not go to the foundation or basis of the defendant's rights); *Higgins*, 122 Idaho at 596, 836 P.2d at 542 (see above); *Bingham*, 116 Idaho at 423, 776 P.2d at 432 (see above); *State v. Sanchez*, 147 Idaho 521, 211 P.3d 130 (Ct. App. 2009) (concluding that even if admission of a 911 recording was erroneous, appellant failed to object at trial, and admission of the evidence did not rise to the level of fundamental error); *State v. Smith*, 135 Idaho 712, 23 P.3d 786 (Ct. App. 2001) (concluding that the admission of expert testimony that the markings left on the .22 casings found in the victims' home was consistent with marks created by the defendant's gun was not subject to fundamental error analysis because it did not go to the foundation of the defendant's case or take from him a right essential to his defense); *State v. Norton*, 134 Idaho 875, 11 P.3d 494 (Ct. App. 2000) (concluding that the admission of an exhibit depicting an enlargement of comparative fingerprints propounded for illustrative purposes did not constitute fundamental error as an abuse of discretion in admitting evidence does not constitute fundamental error); *State v. Johnson*, 132 Idaho 726, 979 P.2d 128 (Ct. App. 1999) (concluding that the admission of expert testimony of the physician's assistant who evaluated the defendant at the jail following his arrest for DUI would not be reviewed on his claim that it violated the physician-patient privilege was not subject to a fundamental error analysis because it neither goes to the foundation of the case nor takes from the defendant a right which was essential to his defense); *Rozajewski*, 130 Idaho at 645, 945 P.2d at 1391 (see above); *State v. Lewis*, 126 Idaho 282, 882 P.2d 449 (Ct. App. 1994) (concluding that the admission of a police officer's testimony regarding an HGN test administered to the defendant was not fundamental error because it did not go to foundation of case or take from the defendant a right that was essential to his defense); *State v. Roles*, 122 Idaho 138, 832 P.2d 311 (Ct. App. 1992) (concluding that the trial court's decision to admit

at trial may not be reviewed for fundamental error on appeal, unless the appellant can establish a constitutional violation, independent of any alleged evidentiary error. *See, e.g.*, *State v. Poland*, 116 Idaho 34, 36, 773 P.2d 651, 653 (Ct. App. 1989) (concluding that the admission of testimony about a defendant's post-*Miranda* silence constitutes fundamental error). We believe that this reflects the current state of the law in Idaho that alleged errors will not be reviewed on appeal absent an objection at trial, unless the defendant can demonstrate the violation of an unwaived *constitutional* right, not a violation of a rule or statute. *See Perry*, 150 Idaho at 226, 245 P.3d at 978.

In this case, Norton relies upon *Johnson* for the proposition that a statement by one witness as to whether another witness is telling the truth may violate the "fundamental right to a fair trial." Norton's reliance, however, is misplaced. In *Johnson*, we concluded that a doctor who testified that, in his opinion, the two child victims had been sexually molested, was not qualified as an expert pursuant to I.R.E. 702. *Johnson*, 119 Idaho at 854-56, 810 P.2d at 1140-42. Based upon the State's argument that the doctor could render his opinion as that of a lay witness, we also determined that the testimony violated I.R.E. 701. *Id.* at 857-58, 810 P.2d at 1143-44. We noted that trial counsel's objection was insufficient to preserve the I.R.E. 701 issue. Nevertheless, in order to address the issue on appeal, we found, under the unique facts and circumstances of that case, that Johnson's fundamental right to a fair trial had been violated where the doctor, who was not qualified to testify as an expert in child sexual abuse, testified that in his opinion, which was based solely upon the histories provided by the child victims and their mother, that the children had been molested. *Id.*

*Johnson* does not stand for the proposition Norton suggests on appeal and is limited to its specific facts. Moreover, *Johnson*'s validity with respect to its conclusion on fundamental error is questionable as the Idaho Supreme Court had previously determined that "[a]n abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his defense." *Bingham*, 116 Idaho at 423,

---

expert evidence regarding post-traumatic stress disorder and the fact that the victim showed signs consistent with that disorder did not constitute fundamental error because "an abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his defense").

776 P.2d at 432 *overruled on other grounds by State v. Pizzuto*, 119 Idaho 742, 775, 810 P.2d 680, 713 (1991). *See State v. Moore*, 131 Idaho 814, 965 P.2d 174 (1998) (applying *Bingham* and concluding that the erroneous admission of expert testimony is not subject to fundamental error analysis); *see also State v. Babb*, 125 Idaho 934, 877 P.2d 905 (1994) (applying *Bingham* and concluding that even if the trial court abused its discretion in admitting lay witness opinion, it was not fundamental error).

Therefore, we conclude that Norton has failed to demonstrate that one or more of her unwaived constitutional rights were violated by Jared's "Yes" statement. Based upon our conclusion, we need not address Norton's claim that Jared's second statement violated her due process right to a fair trial as that claim is based upon the same contention, i.e. that a statement by one witness as to whether another witness is telling the truth may violate the fundamental right to a fair trial.

### 3. Interrogation transcript

Norton claims that the admission of the transcript of Stacy's interrogation constitutes fundamental error. She argues that like the alleged other acts evidence, admission of the interrogation transcript was fundamental error in two ways. First, she contends that admission of the evidence violated I.R.E. 402, 403, 404, 608, and 802. Second, she asserts that presentation of evidence that was so clearly inadmissible was prosecutorial misconduct. The State counters that not only has Norton failed to demonstrate fundamental error, but she is also estopped from raising the issue under the doctrine of invited error because she stipulated to the admission of the transcript.

The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). One may not complain of errors one has consented to or acquiesced in. *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct. App. 1998). In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996).

While cross-examining Stacy, Norton read portions of the interrogation transcript in an attempt to question how Stacy's confession came about and to highlight the fact that he confessed to Norton's involvement only after being threatened with several years in prison. The prosecutor objected to Norton's characterization of the interrogation and noted that she had

12

skipped portions. The district court overruled the objection, stating that the prosecutor could clarify any mischaracterization on redirect. Upon concluding her cross-examination of Stacy, Norton stated that she would stipulate to admission of the interrogation transcript, noting that she would need to make the motion outside the presence of the jury. Norton stated that some information included in the transcript, specifically comments about the Oregon fire being arson, would need to be redacted. The prosecutor did not object to Norton preparing a redacted transcript.

Norton acknowledges that defense counsel did stipulate to the admission of the interrogation transcript, but argues that she did not stipulate to its admission without any limiting instructions. This argument is belied by the record. While the court did not issue any limiting instructions, this was Norton's motion and she had the ability to, and actually did, redact the transcript before it was produced to the jury. Any alleged error that may have occurred was invited, and Norton cannot now claim error on appeal.

### 4. Prosecutorial misconduct

Norton also raises a number of claims regarding prosecutorial misconduct. She contends that the prosecutor committed misconduct when he failed to give I.R.E. 404(b) notice of his intent to present other acts evidence; when he presented large amounts of irrelevant and unfairly prejudicial other acts evidence; when he solicited evidence regarding the Oregon fire in violation of the district court's order; when he inserted himself as a witness through Stacy's interrogation; when he solicited testimony from Sergeant Jared regarding Stacy's and Norton's truthfulness; and during opening, closing, and rebuttal arguments. As noted above, Norton already raised several of these claims, but re-raises them in the context of prosecutorial misconduct. The State contends that "[t]his fails to convert claims that are not fundamental error into claims that are fundamental error." We agree. Norton has not demonstrated fundamental error with respect to any of her evidentiary allegations and, therefore, cannot establish prosecutorial misconduct where her claims are based on those allegations.[5] We do, however, address Norton's non-

---

[5] The only claims not directly addressed above are Norton's contentions that the prosecutor solicited evidence regarding the Oregon fire in violation of the district court's order and that he inserted himself as a witness in Stacy's interrogation. However, the transcript makes clear that the prosecutor did not solicit any evidence in violation of the court's order and, as such, did not commit misconduct. With respect to Norton's contention that the prosecutor inserted himself as a witness in Stacy's interrogation, as previously noted, Norton stipulated to the admission of the

13

evidentiary misconduct claims that the prosecutor committed misconduct during opening and closing arguments.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* Where prosecutorial misconduct was not objected to at trial, Idaho appellate courts may order a reversal only when the defendant demonstrates that the violation in question qualifies as fundamental error. *Perry*, 150 Idaho at 227, 245 P.3d at 979.

With respect to her contentions regarding the prosecutor's opening, closing, and rebuttal arguments, Norton asserts that the prosecutor committed misconduct by arguing that the case was like a Jerry Springer episode, that Norton had lied and was a liar, that the defense case was nothing but red herrings and smoke and mirrors, and by making statements not supported by the evidence.

During the prosecutor's opening statement, he stated:

> If I was to try to sum up the case that you're about to hear it would be like this: This is a case about being caught by the lie. You've heard the phrase the truth will set you free. Well, this is the antithesis of that phrase. In this case as you will hear the lie will convict her. Also important in this case is motive. Again, hear evidence in this case about greed and revenge. I know that sounds a little bit like a Jerry Springer episode, but that is what the evidence is going to show you in this case. But the motive and what the motive in this case boils down to [is] greed and revenge.

The prosecutor again referred to the case as a Jerry Springer episode in closing. Norton contends that the "Jerry Springer theme was inflammatory and misconduct." However, while the prosecutor's reference to Jerry Springer in the context of the themes of greed and revenge may have been, at most, inappropriate, it is not misconduct.

Norton also argues that the "liar lying theme was misconduct." She further contends that because she "never testified that she had lied in connection with this case," the "argument that

interrogation transcript and took the opportunity to redact it before it was published to the jury. As such, this claim must also fail as any error was invited.

she was lying was improper." This argument, however, is belied by the record. The prosecutor did make several references in opening, closing, and rebuttal to a lie. The lie that he was referring to was the fact that both Norton and Stacy insisted that Stacy was in Pierce between 5:00 and 7:00 p.m. on the evening of the fire. The thrust of the prosecutor's argument was the fact that Norton continued to insist that Stacy was at her house in Kamiah when she knew that he was in Pierce setting that house on fire. The prosecutor's arguments in this regard do not constitute misconduct. Moreover, Norton did testify that she had lied in connection with the case, specifically about the timeframe that the prosecutor continually referenced. Norton admitted on cross-examination that she lied to Sergeant Jared about Stacy's whereabouts during the timeframe between 5:00 and 7:00 p.m. While she maintained that he was obtaining marijuana for her during that time, the fact remains that she lied. The prosecutor was free to argue the evidence and any reasonable inferences to be drawn from that evidence.

Norton next asserts that the prosecutor committed misconduct by referring to the defense arguments as red herrings and smoke and mirrors. Neither party cites to Idaho case law for the proposition that such an argument does or does not constitute prosecutorial misconduct. Norton maintains, however, that such an argument "is an impermissible attack intended to encourage the jury to focus on the conduct of defense counsel rather than on the evidence of guilt." Norton does note in her reply brief that, in Idaho, the prosecutor's closing argument should not include disparaging comments about opposing counsel. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). *See also State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998); *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984). The prosecutor's comments here were not directed at defense counsel personally, but rather were comments on the defense theories. We conclude that the prosecutor's rebuttal argument referring to some of defense counsel's arguments as red herrings and smoke and mirrors was not misconduct.

Finally, Norton contends that the prosecutor's argument that she would have walked away with $170,000 in cash in insurance proceeds constituted misconduct because it was not supported by the evidence. She contends that the policy itself contradicts the prosecutor's assertion because the replacement cost is limited to "the full amount actually and necessarily spent to repair or replace the damaged building as determined shortly following the loss." While

15

the policy was admitted into evidence, Norton's argument ignores other evidence. The prosecutor engaged Safeco's special investigator, Tracy Johnson, in the following discussion:

Q.    Just so I understand this correctly, if the insurance policy for the structure, let's say it was 240,000, not including an additional amount for a detached building, assuming that existed, just the $240,000, and the lien on the building was around $70,000. What would be done -- if the building was a total loss what would have happened to the difference?

A.    We would have rebuilt the home. We would have rebuilt it to a $240,000 home.

Q.    Would you have paid off the lienholder?

A.    No.

Q.    Would Ms. Norton have been able to receive cash for those things?

A.    Yeah.

Based upon this exchange, there was some evidence supporting the prosecutor's argument that Norton stood to profit from the difference. As such, the prosecutor's statement did not constitute misconduct.

Norton has failed to demonstrate that the prosecutor committed misconduct during opening, closing, or rebuttal arguments. Where Norton has not established any error, we need not address *Perry*'s three-prong inquiry to determine whether fundamental error demands reversal.

**B.    Motion in Limine**

Prior to trial, Norton filed a motion in limine, pursuant to I.R.E. 404(b), "to exclude any and all evidence regarding (1) any alleged involvement of the defendant in a house fire that occurred in the state of Oregon and (2) any alleged involvement in 'murder for hire' regarding defendant's ex-husband." The district court granted Norton's motion in part and denied it in part. Norton argues that the court erred in denying her motion in part. The State contends that Norton has failed to show that the court abused its discretion in admitting the challenged evidence.

With respect to Norton's claim regarding the house fire in Oregon, the district court held that any reference to arson in Oregon should be excluded, including any mention about the way in which the fire came about. The court also held, however, that evidence that the house burned and that it was insured was admissible. With respect to Norton's claim regarding the murder for hire, the district court held that any evidence regarding a conspiracy to murder her ex-husband

16

was unduly prejudicial and should be excluded. However, the court held that evidence that Norton had financial problems and attempted to sell Mr. Norton's property at discount rates was probative of motive for arson. Norton contends that the court's ruling was error.

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). In determining the admissibility of evidence of prior bad acts, the Supreme Court has utilized a two-tiered analysis. The first tier involves a two-part inquiry: (1) whether there is sufficient evidence to establish the prior bad acts as fact; and (2) whether the prior bad acts are relevant to a material disputed issue concerning the crime charged, other than propensity. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). We will treat the trial court's factual determination that a prior bad act has been established by sufficient evidence as we do all factual findings by a trial court. We defer to a trial court's factual findings if supported by substantial and competent evidence in the record. *State v. Porter*, 130 Idaho 772, 789, 948 P.2d 127, 144 (1997). In this case, Norton does not challenge the existence of the prior bad act as an established fact. Therefore, we address only the second part of the first tier--the relevancy determination. Whether evidence is relevant is an issue of law. *Atkinson*, 124 Idaho at 819, 864 P.2d at 657. Therefore, when considering admission of evidence of prior bad acts, we exercise free review of the trial court's relevancy determination. *Id.*

The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. When reviewing this tier we use an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

17

### 1.      Oregon fire

Regarding evidence of the Oregon fire, the district court held:

> . . . [E]vidence that the house burned and that it was insured is admissible. Those facts are relevant to Ms. Norton's knowledge of what happens when an insured home burns. The same can be said of her training as a firefighter and her knowledge of "igniters." The fact that she knows the nature of house fires and what can cause them to burn goes to whether she was capable of setting or arranging for the setting of the fire at Pierce. An essential aspect of any criminal charge is whether the accused was capable of committing the crime. I conclude the evidence is probative of Ms. Norton's knowledge and capacity regarding the offenses for which she is charged.

Norton argues that evidence of the Oregon fire was not relevant to a material disputed issue concerning the crime charged, other than propensity, because there was never any dispute that she knew what happens when an insured house burns. The State asserts that this evidence is not even subject to I.R.E. 404(b) analysis because receiving an insurance payment for a house fire is not a "prior bad act" and is not indicative of character. Norton counters that I.R.E. 404(b) is not limited to "bad" acts.

Norton is correct that Rule 404(b) is not limited to "bad" acts. Rather, the rule encompasses "other crimes, wrongs, or acts." I.R.E. 404(b). However, evidence runs afoul of Rule 404(b) only if its purpose is "to prove the character of a person in order to show that the person acted in conformity therewith." I.R.E. 404(b). Therefore, evidence is inadmissible where its purpose is to demonstrate a propensity to commit other crimes, wrongs, or acts. Here, the district court limited the evidence of the Oregon fire to the fact that Norton's house burned and that it was insured. We conclude this evidence does not bear on Norton's character and, therefore, is not subject to I.R.E. 404(b).

Norton maintains, however, that the district court abused its discretion in admitting the evidence because its probative value was substantially outweighed by unfair prejudice. In exercising its discretion, the court determined that any evidence that Norton had set the Oregon house on fire was based upon what she had told certain witnesses, and was too tenuous to support that conclusion. The court also concluded that any evidence that Norton had committed a similar crime in the past could not be offered to show that she was more likely to have committed the charged crime. Therefore, the court prohibited any reference to arson or to how the fire came about. Nevertheless, the court also determined that the facts that the house burned

and that it was insured were relevant to Norton's knowledge. As such, the court did weigh all of the evidence, concluding that any reference to arson was too prejudicial, but that evidence of the insured house burning was probative to Norton's "knowledge and capacity regarding the offenses for which she is charged." We conclude that Norton has failed to show that the district court abused its discretion in admitting the evidence.

## 2. Attempts to sell property

With respect to evidence regarding Norton's attempts to sell Daryl Norton's property, that issue was raised in the State's brief in opposition to Norton's motion in limine. The only issue raised by Norton dealt with evidence regarding a murder for hire. The State responded by noting that Norton had made comments that both the house and her husband, Daryl, were heavily insured and that if things did not go right for her, he would have "to go." The State argued that Norton's financial condition was worsening and that she blamed her situation on her husband. The State pointed to excerpts from the preliminary hearing, in which Kevin Hornbuckle testified that he owed Norton money and that she offered him some financial help if he would assist her in getting rid of her husband. He also testified that Norton asked him to help her sell some items of personal property, and that if he assisted her, he would no longer be indebted to her.

Based upon the arguments presented, the district court held that any evidence regarding a conspiracy to kill Daryl had nothing to do with the charged offenses and would "unduly divest the jury's attention from the charges against Ms. Norton and focus its attention and concern on a sensational allegation that has not been charged." Regarding the financial problems raised by the State, the court stated:

> The fact that Ms. Norton had financial problems and tried to get Mr. Hornbuckle to sell [Daryl's] property at discount rates is very probative of a motive for arson, and is not tainted unfairly prejudicial. That evidence should be available to the jury for its consideration.

Hornbuckle testified at trial that Norton requested his help in selling a Bow-flex, a trailer, and tools, all of which allegedly belonged to Daryl, in order to raise approximately $1,600.

Norton argues that such evidence is "inconsistent with the theory of financial difficulties so severe that they were a motive for arson" because a person "in difficult financial straits would want to sell property for the highest possible dollar value." The State asserts that the evidence demonstrated that Norton needed money, which gave her a motive to commit arson for the purpose of obtaining the insurance proceeds. We conclude that any evidence regarding financial

difficulties is clearly relevant to establish motive in a case involving charges of arson and insurance fraud.

Norton contends, however, that evidence that she attempted to sell Daryl's property is other acts evidence, specifically evidence of theft, which is prohibited by I.R.E. 404(b) and 403. She further claims that where motive is not an issue, other acts evidence is not admissible to prove motive. The primary issue at trial, however, was whether Norton committed the charged offenses. Part of the State's case was demonstrating who had a motive to commit the crimes. As such, Norton's motives for why she would commit the offenses and whether she stood to gain anything from them were material issues in the case. The evidence was also relevant to the State's theory that Norton blamed her financial condition on her husband and that she arranged to have the fire set while he was in Pierce in order to implicate him in the arson. We agree with the district court that evidence of financial problems is probative of a motive for arson. Moreover, as with the evidence of the Oregon fire, the district court weighed the evidence and appropriately exercised its discretion in allowing the State to present evidence of Norton's financial difficulties.

## C.    Motion for Mistrial

During the direct examination of Kevin Hornbuckle, the prosecutor asked whether Norton had told him anything about whether "she had any sort of specialized knowledge in how to set fires." Hornbuckle responded:

> She's -- she basically -- yes, she has a couple of times saying, you know, she volunteered [as a] firefighter. She knew the captain, and he showed her how to set fires, and they put out fires, and they do all sorts of stuff through the training so she learned how. And she was gloating that she had a -- basically a hand in getting her house on fire and getting collected.

The prosecutor stated, "let's set that aside," and Norton requested a motion hearing out of the presence of the jury where she then moved for a mistrial. The prosecutor argued that a mistrial was not warranted and that the court could instruct the jury to disregard the statement. The prosecutor also stated that he would agree to a statement to the jury that the official declared that the cause of the fire in Oregon was an electrical short. Norton initially agreed with the prosecutor, but noted that she would renew her motion if anything else were said by any other witness.

20

Norton subsequently renewed her motion and argued that Hornbuckle's statement violated the district court's order prohibiting any references to the Oregon fire being arson. The prosecutor argued that none of the questioning was posed for the purpose of developing testimony regarding arson and that Hornbuckle's statement could be cured. The court denied Norton's motion for a mistrial and ultimately instructed the jury as follows:

> There was a statement by Mr. Hornbuckle, last statement he made during his testimony yesterday that was susceptible to being interpreted that in some manner Ms. Norton may have had something to do with the fire in Oregon. I am instructing you that you are to draw no inferences that lead to that conclusion. The Oregon authorities concluded that that fire was started by an electrical short, and you are not to conclude from that, that that short -- that Ms. Norton had anything to do with that short. The rest of the testimony you're entitled to draw whatever inferences you think are appropriate. Is there anybody that thinks they can't follow the instruction that I'm just giving, that is, to disregard the last remark of Mr. Hornbuckle? Okay, thank you.

On appeal, Norton contends that the district court erred in denying her motion for a mistrial. She further claims that the nature of the inadmissible testimony was such that a curative instruction was insufficient. The State argues that there is no reason to believe that the jury disregarded the court's curative instruction.

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A "mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). The error will be deemed harmless if the appellate court is able to declare, beyond a reasonable doubt, that there

21

was no reasonable possibility that the event complained of contributed to the conviction. *State v. Morgan*, 144 Idaho 861, 863, 172 P.3d 1136, 1138 (Ct. App. 2007).

In *State v. Grantham*, 146 Idaho 490, 198 P.3d 128 (Ct. App. 2008), this Court reviewed a lower court's denial of a motion for mistrial where the court gave a curative instruction following the motion. The Court announced the standard set forth in *Urquhart*, identified the appellant's contention on appeal, including the fact that the appellant argued that the curative instruction was insufficient, and then stated:

> The admission of improper evidence does not automatically require the declaration of a mistrial. *State v. Hill*, 140 Idaho 625, 631, 97 P.3d 1014, 1020 (Ct. App. 2004); *State v. Rose*, 125 Idaho 266, 269, 869 P.2d 583, 586 (Ct. App. 1994). Where improper testimony is inadvertently introduced into a trial and the trial court promptly instructs the jury to disregard such evidence, it is ordinarily presumed that the jury obeyed the court's instruction entirely. *Hill*, 140 Idaho at 631, 97 P.3d at 1020. We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant. *Id.*; *see also Greer v. Miller*, 483 U.S. 756, 766 n.8, 107 S.Ct. 3102, 3109 n.8, 97 L.Ed.2d 618, 630 n.8 (1987). An error is harmless, rather than reversible, when the reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *State v. Barcella*, 135 Idaho 191, 197, 16 P.3d 288, 294 (Ct. App. 2000).

*Grantham*, 146 Idaho at 498, 198 P.3d at 136.

The parties argue over what standard should be applied to a motion for a mistrial, with Norton arguing the standard harmless error test set forth in *Urquhart*, and the State arguing the language from *Grantham* with respect to whether there is an overwhelming probability that the jury was unable to follow the court's instruction. *Grantham* did not attempt to change the standard; rather, it makes clear that where a court gives a curative instruction, the appellate court may consider that factor in determining whether the alleged error is reversible. Here, the event that "triggered" the mistrial motion was Hornbuckle's statement regarding the Oregon fire. While the statement was improper, we conclude that it was harmless beyond a reasonable doubt.

The district court here specifically instructed the jury to disregard Hornbuckle's last statement. The court inquired whether any of the jurors felt that they could not follow that instruction, and none of them indicated that they would be unable to do so. The evidence in this case was overwhelming. Norton purchased her insurance policy approximately three months

22

before the fire occurred. She acknowledged at trial that she was the only individual on the policy and that she was the only one who would financially benefit from the house fire. Hornbuckle testified that Norton told him if things did not go right for her, with her husband and her finances, that she "heavily insures everything." Hornbuckle also testified that Norton told him she knew how to start fires and was familiar with "igniters," such as gasoline. The physical evidence suggested that an accelerant, such as gasoline, was likely used to start the fire and that had the door to the basement not been shut, the fire would have likely consumed the entire house. The physical evidence directly corroborated Stacy's account of how the fire started. He testified that when he and Norton left Pierce on the morning of the day the fire occurred, he smelled gasoline on her. When he returned to the house later to set the fire at Norton's request, he smelled gas fumes and saw a plastic gas can sitting on the bed in the basement. Stacy testified that he lit a small candle that had been left there, "booted" it towards the bed, ran up the stairs, flung the door, ran out of the house and over the fence, and went back down the hill to his car.

Sergeant Jared testified that he interviewed Norton and Stacy several times. During each interview with Norton, she was adamant that Stacy was at her house in Kamiah between 5:00 and 7:00 p.m. Stacy also initially maintained that he was in Kamiah during that timeframe. However, Jared interviewed other witnesses, who also testified at trial, and they placed Stacy in Pierce at that time. When pressed with the inconsistencies of his story, Stacy ultimately told investigators that Norton asked him to help her burn the house down and that she would pay him some money out of the insurance proceeds. Stacy testified that Norton timed the fire so that her husband, Daryl, whom she was divorcing, would be blamed for the fire. Norton told police and insurance investigators that she suspected Daryl had started the fire.

Following Stacy's confession to the police, he had a wired conversation with Norton about the incident, and that conversation was admitted into evidence. During the conversation, Norton repeatedly told Stacy to "stay with the story," reviewed the timeframe of their activities the day of the fire, told him a number of times that he had a "solid alibi," told him that Daryl was being investigated, told him that if they continued to question him to get a lawyer, told him several times not to "crack," and told him that she was "personally taking care of [him]."

Norton testified at trial that the "story" that Stacy was sticking to was fabricated in order to avoid telling investigators that Stacy had gone to Orofino to obtain some marijuana for her. On cross-examination, Norton acknowledged having lied to Sergeant Jared about Stacy's

23

whereabouts, but testified that it was to cover for him getting her marijuana. Norton maintained that while the wired conversation went back and forth between arson and marijuana, her statements about sticking with the story and an alibi were in reference to the fact that she and Stacy did not want to get arrested for having marijuana.

Norton argues on appeal that while evidence of the conversation "is certainly not evidence the defense would have been happy to read in discovery," nowhere did she say, "I spread the gas," or "I planned the fire." She further notes that she did provide an explanation for her statements other than arson. This explanation, however, goes against the great weight of the evidence.

Stacy mentioned a number of times during the wired conversation that he was concerned about going to jail for fifty-five years for arson. He also told Norton that there were witnesses who could place him in Pierce. Norton kept assuring him, however, that Daryl was being investigated and that as long as they "stick with the story," they would be "golden." When Stacy told Norton that she may also want to get a lawyer because the investigators were looking at her as well, she stated: "Well, that's normal. They will look at me. But I'm fine. I gave them my criminal history, which wasn't much." Later on in the conversation, Norton states that the only reason the investigators were looking at her was because of the insurance. It is evident that the wired conversation was about the arson, not marijuana use.

We are convinced beyond a reasonable doubt that the jury would have reached the same verdict without the admission of the challenged evidence. We conclude that based upon the totality of the evidence, and when viewed in context of the full record and in light of the court's instruction, Hornbuckle's statement did not contribute to Norton's conviction. Therefore, the district court did not err in denying Norton's motion for a mistrial.

D.     Cumulative Error

Lastly, Norton contends that the cumulative error doctrine requires reversal. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *Moore*, 131 Idaho at 823, 965 P.2d at 183. The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Because Norton has failed to

demonstrate that there are multiple errors to cumulate, the cumulative error doctrine does not apply.

## III.

## CONCLUSION

Norton has failed to establish fundamental error as to any of her claims such that this Court will review them for the first time on appeal. The district court did not err in denying, in part, Norton's motion in limine to exclude evidence. The district court did not err in denying Norton's motion for a mistrial. The cumulative error doctrine does not apply in this case. Norton's judgment of conviction is, therefore, affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**