**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 37774**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 433** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: April 4, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **GARY WAYNE MALLORY,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Carl B. Kerrick, District Judge.

Judgment of conviction for first degree murder and felony domestic violence, <u>affirmed</u>.

Dennis Benjamin of Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Gary Wayne Mallory appeals from his judgment of conviction for first degree murder and felony domestic violence. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Mallory's wife died by strangulation on February 14, 2009. The state charged Mallory with first degree murder, I.C. §§ 18-4001, 18-4002, and 18-4003(a); and felony domestic violence, I.C. §§ 18-918(2)(a)(b) and 18-903(a). Prior to trial in March 2010, Mallory filed a motion in limine to preclude the state from introducing evidence or comments concerning injuries the victim sustained prior to the 2009 incidents at issue in this case. Specifically, Mallory requested that, pursuant to I.R.E. 404(b) and I.R.E. 403, the forensic pathologist who examined the victim's body be precluded from testifying that the examination revealed evidence

1

of prior rib injuries.  At a pretrial hearing, the district court denied Mallory's motion.  At trial, the forensic pathologist testified on direct examination as follows:

> There were multiple rib fractures.  And the ribs were fractured, some--one at the midline and one above the sternum or breast bone.  But most of the factures were on her left side of her chest.  And they were near--between the front of the body and the side of the body is what we call anterior lateral.  So, kind of at the junction of the front and the side.  And those fractures were surrounded by hemorrhage or bleeding because any broken bone bleeds.  The breast bone fracture and the fracture that was closer to the midline didn't have as much bleeding around it.
>
> In addition to these fractures that didn't show any signs of healing, meaning they were pretty new, they hadn't started to heal, there were some old fractures.  And the ribs themselves had scar tissue, which in a bone, you call a callus.  So, those had been there for some period of time and didn't directly reflect upon the death of this decedent.  And they were on the opposite side.
>
> But there were newer rib fractures, or new rib fractures without healing on the left.

On cross-examination, the forensic pathologist reiterated that she could not determine how the victim sustained the old rib fractures.  The remainder of her testimony on this issue on cross-examination dealt primarily with her opinion that such injuries would be painful in the days following the injury.

The jury found Mallory guilty of first degree murder and felony domestic violence.  The district court sentenced Mallory to a unified term of life imprisonment, with a minimum period of confinement of twenty-eight years, for first degree murder.  The district court also sentenced Mallory to a consecutive determinate term of two years for felony domestic violence.  Mallory appeals.

## II.

## ANALYSIS

Mallory argues that the district court erred by denying his motion in limine.  Specifically, Mallory asserts that the district court erred by permitting the testimony of the forensic pathologist regarding the victim's prior rib injuries because such evidence was inadmissible pursuant to I.R.E. 404(b) and I.R.E. 403.

Idaho Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of

2

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

3

Mallory argues that the forensic pathologist's testimony regarding the victim's prior rib injuries should not have been admitted pursuant to I.R.E. 404(b). Mallory asserts that the inference drawn from the evidence would necessarily be that he committed some prior act that caused the injuries and, because there was no evidence presented as to the actual cause of the injuries, there was insufficient evidence to establish the prior act as fact. Mallory also asserts that the evidence was not relevant to a material disputed issue concerning the crime charged, other than propensity. Specifically, Mallory argues that, because the victim's death was caused by manual strangulation, evidence of the victim's prior rib injuries was irrelevant and, therefore, inadmissible. Mallory further argues that the district court abused its discretion in balancing the probative value of the evidence against the danger of unfair prejudice pursuant to I.R.E. 403. Mallory asserts that the forensic pathologist's testimony had no probative value and was unfairly prejudicial because it led the jury to conclude that Mallory was a man of criminal brutality and, therefore, more likely to have strangled the victim in this case because he had broken her ribs in the past. Mallory finally argues that, because the district court did not view the issue as one implicating Rule 404(b), it did not identify a proper purpose for the Rule 404(b) character evidence and, thus, did not act consistently with legal standards applicable to the specific choices available when denying Mallory's motion in limine.

We first address Mallory's assertion that the district court did not view the issue as one implicating Rule 404(b). We also note that the state argues Mallory's argument fails under the plain language of Rule 404(b) because the victim's prior rib injuries, without any evidence presented that Mallory caused the injuries, does not qualify as evidence of any prior crime, wrong, or act committed by Mallory that would be subject to exclusion under the rule. We agree. The forensic pathologist's testimony regarding the victim's prior rib injuries does not implicate Rule 404(b). As such, Mallory's claim that such testimony was inadmissible pursuant to Rule 404(b) is without merit.

We next address Mallory's argument that the district court abused its discretion in balancing the probative value of the forensic pathologist's testimony against its prejudicial effect pursuant to Rule 403. Idaho Rule of Evidence 401 provides that relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Further, Rule 403 provides that, although relevant, evidence may be excluded if its probative

4

value is substantially outweighed by the danger of unfair prejudice. A lower court's determination under Rule 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

At the hearing on Mallory's motion in limine, the district court stated:

But the prior injury issue, you know, typically, if you have a pathologist testify, they're going to testify as to all their observations relative to the victim and injuries.

And it would seem to the Court that part of those observations might be the timing of particular injuries, such that the expert may say that these injuries appear to be very recent injuries, may very well have been the cause of death, or whatever the opinion may be. The other injury, however, does not appear to have been a contributing factor to the cause of death. And it would seem to me that that would be appropriate testimony for an expert to give because that's part of the basis of their opinion on what caused the death of the decedent.

And I don't know if the State's wanting to go beyond simply that explanation, but that strikes the Court as being appropriate because that's what the pathologist is going to be called upon to do.

The district court also stated:

Well, I'll stop you there because I'm not so sure that I agree that it's unfairly prejudicial, because there's no indication beyond that that it had anything to do with the person who's charged with the offense, because the pathologist would be identifying that as an injury that was incurred separate and apart and at a different time and, presumably, with no opinion as to how that was caused or by who caused it.

The state responded:

Yes. As for that, Your Honor, Your Honor's, I guess, summary of what you believe the purpose of that testimony to be is correct. [The forensic pathologist] would be testifying as to the injuries she had found on the [victim]. And an old fracture would be one, and the State believes she would use that in aiding--assisting her testimony to explain to the jury there was also a fresh fracture to compare the two.

The State is in no way going to be soliciting testimony from [the forensic pathologist] as to who caused those injuries, the old injuries, just as to her observations while she was conducting her medical examination.

The district court concluded:

The motion in limine relative to the prior injury is denied. And I guess maybe my questions kind of shed some light on my thinking about that. I think

5

anytime you get a pathologist in to testify, they're going to have some testimony relative to maybe prior injuries that occurred to the decedent and why those don't bear on the pathologist's particular opinion as to maybe the case in question.

It's my understanding there isn't going to be anything other than the observations that--made by the pathologist that those injuries are older than some injuries, some being more recent. So, I don't find that to be unduly prejudicial and relevant in terms of explaining that expert's testimony.

The forensic pathologist's testimony regarding the victim's prior rib fractures was not directly relevant to a determination of the cause of death because the forensic pathologist testified that the cause of death was manual strangulation. However, the testimony regarding recent rib fractures was relevant because Mallory was also charged with domestic violence. Thus, the evidence of old fractures was relevant as to the domestic violence charge because it appears that it was admitted to illustrate (as the state argued) the difference between old rib fractures and recent ones and to explain the forensic pathologist's conclusion that the recent fractures were, in fact recent. This evidence was relevant to prove domestic violence. Thus, the evidence was relevant under Idaho Rule of Evidence 401. It also appears from the record that the court engaged in an analysis under Idaho Rule of Evidence 403 and determined that the evidence was not unfairly prejudicial because the old injuries were not linked to Mallory in any way. Ultimately, the forensic pathologist testified on direct examination and again on cross-examination that she had no opinion as to the cause of the old fractures. Therefore, the district court did not err in admitting the evidence of prior rib fractures.

Even if we were to determine that the evidence should not have been admitted, error is harmless and not reversible if the reviewing court is convinced beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010). Thus, we examine whether the error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005).

We first note that the forensic pathologist's testimony concerning the victim's prior rib injuries was brief. The autopsy findings revealed the victim died from manual strangulation and suffered multiple bruises, several *newly* fractured ribs, and a dislocated bone. Additionally, the admissible evidence against Mallory was overwhelming. Such evidence included the testimony of the officer that responded to Mallory's residence and found the victim dead in her bedroom. This officer testified that, when he first entered the room, Mallory was curled up on the bed with

the victim and clutching her hand.  The officer further testified that, after discovering the victim had no pulse, the officer conducted a field interview with Mallory to gain information.  The officer testified:

> Obviously, being that it was a crime scene, I removed Mr. Mallory from the crime scene.  I took him up--initially upstairs and then eventually moved him out to the front of the residence.
>
> . . . .
>
> Well, as we were exiting the residence, he advised me that--or he requested that he have a cigarette prior to going to jail.  I kind of thought that was a bit unusual, as I didn't make any interrogation-type questions at that point.
>
> I also wasn't sure exactly what I had at the time.  So, I thought that to be kind of unusual.  He made this request several times.  I specifically asked him, you know, why he thought he would be going to jail.  I was--I was just trying to get a basis as to what had happened.
>
> He didn't answer that question.  He didn't answer why--you know, when I asked him why he thought he was going to jail, he didn't answer that question.  But I thought it unusual that he would say that he wanted a cigarette prior to going to jail.
>
> His--he made some other body gestures that were a little concerning to me as well.
>
> . . . .
>
> When we got outside, I asked him, you know, basically to have a seat.  There was a lawn chair that was right next to the residence.  At that time, he insisted on putting his hands behind his back, which was a little bit unusual.
>
> At one point, he actually had his hands behind his back and got down on both knees in what is considered by law enforcement to be kind of a surrendering position or a take--almost a takedown position, to which I never made this request for him to do this.  And I even instructed him multiple times that he could relax.  He didn't have to sit like that.  I was just trying to gain some information.
>
> I made multiple requests for him to just have a seat in the chair outside and kind of relax.  And at no point did he ever have a seat.  He remained in that takedown position until I was done speaking with him.

Additionally, an acquaintance of Mallory testified that he saw Mallory push the victim up against a vehicle outside of a tavern on the afternoon of February 13.  When asked what happened next, the acquaintance testified that Mallory came back into the tavern; stood there for a few minutes; and then said, "I'm going to kill that bitch if she don't straighten up."  A bartender also testified that she saw Mallory in a tavern early in the morning on February 14 and overheard Mallory say "he thought he did something bad."  Further, a patron of that tavern testified that, during his conversation with Mallory in the tavern on the morning on February 14, Mallory stated that, "I think, you know, I might have did something wrong."

7

We conclude that the pathologist's brief reference to the victim's prior rib injuries was not so prejudicial so as to overwhelm or even call into question all the admissible evidence that Mallory was guilty of first degree murder and felony domestic violence such that the reference can be said to have contributed to the verdict in any meaningful way. Accordingly, we are convinced beyond a reasonable doubt that, even assuming the district court erred by admitting the pathologist's testimony regarding the victim's prior rib injuries, such error did not contribute to the verdict obtained against Mallory and was, therefore, harmless.

## III.

## CONCLUSION

Mallory's claim that the forensic pathologist's testimony regarding the victim's prior rib injuries was inadmissible pursuant to I.R.E. 404(b) is without merit because such testimony does not implicate I.R.E. 404(b). Further, the district court did not abuse its discretion in determining that such testimony was not unfairly prejudicial. Even assuming that the district court erred by admitting such testimony, the error was harmless because we are convinced beyond a reasonable doubt that the error did not contribute to the verdict obtained against Mallory. Accordingly, Mallory's judgment of conviction for first degree murder and felony domestic violence is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**