**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42532**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 69 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 29, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MICHAEL BRIAN WILSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy L. Hansen, District Judge.

Judgment of conviction for conspiracy to commit aggravated battery and aggravated assault with intent to promote gang activity, affirmed.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Michael Brian Wilson appeals from his judgment of conviction. Wilson raises two issues on appeal. He first contends that his right to a fair trial and due process of law was violated when a disqualified juror served on his jury. He also argues that the trial court erred in admitting evidence regarding his gang association. For the reasons that follow, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While incarcerated in a state correctional facility, Wilson was involved in an orchestrated attack against other inmates. The State indicted Wilson with conspiracy to commit aggravated battery, Idaho Code §§ 18-903(a), 18-907(1)(a) and (b), 18-1701, 18-204, and aggravated assault, I.C. §§ 18-901(a), 18-905(b), 18-204. The State also charged Wilson with enhancements

1

for intent to promote criminal gang activity, I.C. §§ 18-8502, 18-8503, 18-204, and for being a persistent violator, I.C. § 19-2514.

Prior to trial, the State filed a notice of intent to use evidence of Wilson's gang association under Idaho Rule of Evidence 404(b). The trial court then held a hearing on the issue, during which both parties had an opportunity to argue the relevance and prejudicial effect of the proffered evidence. In considering the interplay between the prejudicial nature and probative value of the evidence, the court reasoned:

> The question, though, then becomes if in fact it is relevant for some purpose other than propensity, whether or not it is more prejudicial than probative as to that evidence, for which it is evidence; in other words, motive, plan, or preparation.
>
> In this situation, I'm inclined to agree with counsel for the defense is concerned that this evidence would in fact run the risk of some prejudice to the defendants if in fact it were presented for the jury's consideration. However, the mere fact that it is prejudicial in and of itself does not mean that it needs to be excluded. In this situation, the reality is that any evidence in support of a charge against a defendant of proving that that charge is true is going to be, by definition, prejudicial.
>
> The question is whether it is unfairly prejudicial, and in this situation again, I think because it does go to the question of motive, plan and preparation, to some extent to explain to the jury the reasons as to why this conduct occurred, I think under those circumstances it is more probative of that fact than it is prejudicial to the defendants, and the court can in fact give a cautionary instruction to the jury that they are to disregard it for purposes other than those enumerated reasons for its relevance.

After weighing the prejudicial and probative values, the court admitted the evidence for the limited purpose of establishing the plan, preparation, and motive. The case proceeded to the selection of a jury for trial.

During voir dire, the court asked prospective juror number 52 ("Juror 52") if she had any issues with the duration of the trial or schedule. She answered, "Yes. I recently lost my job and am moving to Canyon County this weekend." The court provided both parties with the opportunity to ask Juror 52 follow-up questions, and both parties indicated that they had none. The court then indicated that it would not excuse Juror 52 for cause and neither party objected.

Later, defense counsel questioned Juror 52 individually about her moving plans for the coming weekend. He asked, "So you are still considered an Ada County resident long enough to serve on a jury? Did you talk to the jury commissioner about that?" Juror 52 responded, "Well, my house is still in Ada County, I am putting it up for sale. But I am moving and leaving it

2

vacant." Defense counsel neither objected to nor further questioned her qualification to serve on the jury.

After both parties exercised their peremptory challenges, Juror 52 remained on the jury panel. Before swearing in the jurors, the court specifically asked defense counsel, "[I]s the jury as it is now seated acceptable to the defense?" Defense counsel responded, "It is, Your Honor. Thank you." The court then proceeded to swear in Juror 52 along with the other jury members.

During trial, the State offered testimonial evidence from two correctional facility employees. The court allowed the first employee to testify about the details of how the correctional facility housed inmates according to their affiliation with various Security Threat Groups.[1] This included testimony that the correctional facility had strict procedural safeguards in place to prevent individuals affiliated with certain Security Threat Groups from having physical contact with individuals affiliated with other Security Threat Groups. The State offered the testimony regarding Security Threat Groups to explain why one group of inmates would stage an attack against a separate group of inmates. During the State's examination of the first employee, defense counsel objected when the line of questioning turned toward identifying which Security Threat Group Wilson was affiliated with. The court sustained this objection, stating that the evidence would be "more prejudicial than probative of any issue before the jury for their consideration in the guilt phase of the underlying charges themselves." The court also sustained defense counsel's objection to the second employee's testimony regarding the Security Threat Group affiliation of other inmates, holding that such testimony was cumulative because the first witness had already testified as to the purported Security Threat Group affiliation of the inmates housed with Wilson.

At the conclusion of the trial, the jury found Wilson guilty on both counts: conspiracy to commit aggravated battery and aggravated assault. Wilson then entered an *Alford*[2] plea to the gang enhancement charge, and the State dismissed the persistent violator enhancement charge. Wilson timely appeals.

---

[1]     Security Threat Group is a term of art defined through trial testimony as a "group of three or more individuals with common identifiers, ideology or beliefs that band together with one another to create a threat to the safety and security of the institution." In ordinary terms, a Security Threat Group may be considered a gang within the correctional facility.

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

3

## II.

## ANALYSIS

Wilson raises two issues on appeal. The first issue is whether his right to a fair trial and due process of law was violated when a juror indicated her intent to relocate to a different county during the course of Wilson's jury trial. The second issue is whether the trial court abused its discretion by admitting evidence of Wilson's gang association. We address each issue in turn.

### A. Disqualified Juror

Wilson first argues that his conviction should be vacated because his jury included a statutorily and constitutionally unqualified juror in violation of his constitutional rights. Wilson raises his challenge to the juror's inclusion on the jury panel for the first time on appeal.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

To establish the requirement of the first prong of the *Perry* analysis, Wilson asserts that the inclusion of a constitutionally and statutorily disqualified juror on the jury panel violated his unwaived constitutional right to a fair trial and due process of law under the United States Constitution and the Idaho Constitution. The Sixth Amendment to the United States Constitution, made available to the states through the Due Process Clause of the Fourteenth Amendment, requires that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial jury* of the State and district wherein the crime shall have

4

been committed . . . ." U.S. CONST. amend. VI (emphasis added).[3] Further, the Idaho Constitution establishes that "the right of trial by jury shall remain inviolate." ID CONST. art. I, § 7. Therefore, a defendant's constitutional rights are implicated where the defendant is denied *impartial jurors*. *State v. Moses*, 156 Idaho 855, 862, 332 P.3d 767, 774 (2014).

Under the Sixth Amendment, the mere statutory disqualification of a juror, without more, does not affect the impartial nature of the juror. *See, e.g.*, *United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir. 1971). Wilson has not alleged any facts beyond Juror 52's voir dire testimony to support finding that she was not impartial or that her inclusion on the panel influenced the jury's impartiality. Therefore, even if Juror 52 was statutorily disqualified,[4] Wilson has not established that Juror 52 was not impartial sufficient to constitute a constitutional violation. Because the alleged disqualification did not violate Wilson's constitutional rights under either the United States Constitution or the Idaho Constitution, the fundamental error doctrine is not invoked. *Perry*, 150 Idaho at 226, 245 P.3d at 978 (limiting invocation of the fundamental error doctrine to infringements upon constitutional rights, not to violations of rules or statutes).

## B.     Evidence of Gang Association

Wilson next asserts that the trial court abused its discretion in admitting evidence of Wilson's gang association within the correctional facility. Specifically, he contends that the court erred in holding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under Idaho Rule of Evidence 403. The court admitted the evidence under I.R.E. 404(b), which provides:

---

[3]     It is well-established that the requirement that jurors be drawn from "the State and district wherein the crime shall have been committed," referred to as the vicinage clause, does not apply to state criminal trials. *See, e.g.*, *Price v. Superior Court*, 25 P.3d 618, 632-33 (Cal. 2001); *Bath v. State*, 951 S.W.2d 11, 19 (Tex. Ct. App. 1997). Therefore, Juror 52 could not been constitutionally disqualified as a juror based upon her residency.

[4]     For analysis purposes, we assume that Juror 52 was statutorily disqualified. We note, however, that the State correctly points out that the record lacked evidence that Juror 52 *actually* moved. Based upon the information in the record, if Juror 52 followed through with her stated plan, she would have moved to Canyon County on June 7 and 8. The trial concluded on Thursday, June 12, 2014, with a guilty verdict. Thus, in addition to failing to demonstrate a violation of an unwaived constitutional right, Wilson has failed to demonstrate a clear violation as no evidence exists in the record that Juror 52 actually changed her county of residence.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009); *see also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether, under I.R.E. 403, the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

In this case, Wilson does not challenge his gang association as an established fact, as he admits to associating with one of the Security Threat Groups; nor does he challenge the relevancy of the evidence. Therefore, we address only the issue of unfair prejudice. The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the trial court correctly perceived the

issue as one of discretion; (2) whether the trial court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the trial court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Because the trial court properly perceived the issue as one of discretion, our analysis centers on the second and third prongs of the inquiry.

Regarding those prongs, we conclude that the trial court made a reasoned decision that was consistent with applicable legal standards and within the bounds of its discretion. In his briefing, Wilson correctly notes that a trial court's exercise of discretion is not without limits. *State v. Stoddard*, 105 Idaho 533, 537, 670 P.2d 1318, 1322 (Ct. App. 1983). Its discretion must comport with applicable legal standards. *State v. Day*, 154 Idaho 649, 651, 301 P.3d 655, 657 (Ct. App. 2013) (finding an abuse of discretion when the district court's action was not consistent with applicable legal standards). However, Wilson does not point to any specific legal standards offended by the trial court's decision. Instead, he merely extends a broad contention that the probative value of his gang association was very low as compared to its high prejudicial value.

In *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013), the Idaho Supreme Court held that the district court did not abuse its discretion in determining that the probative value of the defendant's gang association was not outweighed by unfair prejudice. Although the district court recognized the inflammatory and highly prejudicial nature of gang evidence, it found that the evidence was necessary to understand the defendant's motive. *Id.* at 592, 301 P.3d at 250. During trial, the court mitigated the potential for unfair prejudice by instructing the jury that it could only consider the evidence for proving the defendant's motive. *Id.*

Here, after the State filed its notice of intent to use Rule 404(b) evidence, the trial court held a hearing where it gave both parties an opportunity to argue the issue. Before deciding to admit the evidence, the trial court extensively considered its prejudicial nature. The court acknowledged that evidence of gang association is inherently prejudicial. However, the court reasoned that "the mere fact that it is prejudicial in and of itself does not mean that it needs to be excluded." Because evidence of Wilson's gang association was sufficiently probative as to why his conduct occurred, the court held that its probative value outweighed the risk of prejudice to Wilson. Additionally, similar to the court in *Almaraz*, the trial court here took measures to

7

mitigate the potential for unfair prejudice by limiting the scope of witness testimony.[5] While the court did allow the State's witnesses to testify that the inmates were housed categorically based upon their association with the various Security Threat Groups, the court did not allow the State to offer cumulative testimony regarding the affiliations of specific inmates to those groups. It also sustained defense counsel's objection to testimony linking Wilson to any particular Security Threat Group. Because the court properly weighed the potential for prejudice against the probative value of the evidence, and because the court took steps to mitigate the potential for unfair prejudice, we conclude that the court did not abuse its discretion in admitting evidence of Wilson's gang association.

### III.

### CONCLUSION

Wilson has not established fundamental error as to the inclusion of Juror 52, as this did not violate any of his unwaived constitutional rights. Further, the district court did not abuse its discretion in admitting evidence of Wilson's gang association. Accordingly, we affirm Wilson's judgment of conviction.

Judge GRATTON and Judge HUSKEY **CONCUR**.

---

[5] We note here that the better practice in mitigating unfair prejudice is for trial courts to provide limiting instructions to the jury, similar to the court in *State v. Almaraz*, 154 Idaho 584, 592, 301 P.3d 242, 250 (2013).