IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 46700

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 15, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MANUEL JOSE CASTRO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for felony riot with a felony gang enhancement, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Manuel Jose Castro appeals from his judgment of conviction for felony riot with a felony gang enhancement, Idaho Code §§ 18-6401, 18-6402(1)(a), 18-8503(1)(b). We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, a riot broke out between the members of two rival gangs incarcerated in the Canyon County Jail. The riot started when members of the "Southside" gang (Sureños) overheard members of the "Northside" gang (Norteños) reciting a gang chant while exercising and took umbrage. Castro was incarcerated at the Canyon County Jail at the time and was affiliated with the Sureños. During the riot, Castro repeatedly punched and kicked another inmate affiliated with the Norteños. After fighting that inmate, Castro stepped in between two other fighting inmates, but a deputy sprayed the group with pepper spray before Castro could

1

begin fighting. After the deputy left Castro to assist other deputies, Castro entered the shower area and engaged in another bout of fighting.

A grand jury indicted Castro for felony riot with a felony gang enhancement. In anticipation of trial, the State disclosed its intention to call an expert witness to explain various aspects of gang culture. Castro objected and moved for an order in limine to disallow the State's proposed expert testimony and any mention of Castro's gang affiliation. The State subsequently filed a notice under Idaho Rule of Evidence 404(b) seeking to introduce evidence of Castro's gang affiliation to demonstrate gang relations "were the core or primary motive for, and impetus of, the Riot."

At the motion in limine hearing, Castro argued that his gang affiliation was not relevant and that even if it were, the risk of undue prejudice from such evidence substantially outweighed any probative value. The district court disagreed, ruling that evidence of Castro's gang affiliation while incarcerated "is highly relevant to motive and intent of what happened and relevant to the State's case." Further, the court noted evidence of Castro's gang affiliation was "certainly prejudicial," but the court ruled under Rule 403 that the prejudice did not "greatly outweigh[]" the probative value.

Although the State ultimately did not present an expert witness at trial to testify about gang culture, the State did call two witnesses who were incarcerated with Castro at the Canyon County Jail and were involved in the riot. Before these two witnesses testified, the district court addressed Castro's counsel's concern about the extent to which the witnesses could testify about gang involvement and reiterated its earlier ruling that evidence of gang affiliation was admissible:

> Since the theory of the State's case and the charge . . . requires that two or more "act together" in doing this, and the fights broke [out] between rival gang members in Caldwell, the Court . . . finds [it] is relevant for the State to bring out that they were rival gang members . . . on the issue of whether or not they may have been acting together and would allow that with the limiting instruction.
>     . . . .
>     I am allowing you to---because it's part of [the State's] argument that they acted together with somebody else--to raise the gang issue with the limiting instruction on that. In my mind that was a close call. But the Court has determined that the relevance outweighs the potential prejudice to [Castro] especially given the limiting instruction that I've shown to both counsel.

The two witnesses who were involved in the riot testified and described the general nature of gang relations in the jail, how gang rivalry caused the riot, and Castro's role in the riot.

2

Further, they identified Castro as a member of the Sureño gang. During the first witness's testimony about these topics, the district court instructed the jury that "you may only consider [Castro's] alleged gang affiliation for the limited purpose of . . . how such claim may impact his intent or motive on the alleged charge of riot." The court again instructed the jury before deliberations:

> [C]ertain evidence that [Castro] is allegedly affiliated with a gang was admitted for the limited purpose of proving intent or motive for the act of rioting. At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted. Do not consider such evidence for any purpose except the limited purpose for which it was admitted.

The jury found Castro guilty of riot. Thereafter, Castro entered an *Alford*[1] plea to the gang enhancement. The district court imposed a unified sentence of seven years, all indeterminate and consecutive to Castro's prior sentences. Castro timely appeals.

## II.

## ANALYSIS

Castro asserts the district court abused its discretion by admitting evidence of his gang affiliation. The district court admitted the evidence under I.R.E. 404(b), which provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, the prosecutor must:
>> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>> (B) do so reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice.

Rule 404(b) prohibits the introduction of evidence of uncharged conduct if the evidence's probative value is entirely dependent on its tendency to demonstrate the defendant's propensity or character to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Evidence of another crime, wrong or act, however, may implicate a person's character

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

while also being relevant and admissible for a permissible purpose identified in Rule 404(b). *State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence under Rule 404(b), the trial court must first determine whether there is sufficient evidence of the uncharged conduct that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).

On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the uncharged conduct if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Further, this Court freely reviews the question of relevancy as an issue of law. *State v. Rawlings*, 159 Idaho 498, 506, 363 P.3d 339, 347 (2015). We will not disturb, however, the district court's balancing of the evidence's probative value against the danger of unfair prejudice absent an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Castro does not challenge the relevancy of his gang affiliation; rather, he argues the district court erred by concluding the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. In particular, Castro challenges the court's conclusion that his gang affiliation was probative of his intent and motive. He argues that the crime of riot is not a specific intent crime and that his "motive was not particularly probative" of whether he engaged in a riot because "there was no need for an agreement under [the riot] statute."[2] The State responds that Castro's gang affiliation was "necessary to demonstrate his

_____

[2]    The district court instructed the jury that for Castro to be guilty of riot, the State had to prove (1) Castro was "acting together with one or more others"; (2) "without authority of law"; (3) "engaged in any action or used force or violence"; (4) "which disturbed the peace"; and

4

motive," including why a chant is a provoking act of disrespect and why a gang member would be motivated by "fear from retribution within the gang" to participate in the riot.

This Court has previously held in *State v. Wilson*, 159 Idaho 412, 361 P.3d 1275 (Ct. App. 2015), that a defendant's gang affiliation was admissible under Rule 404(b) as evidence of motive. In that case, Wilson, an inmate, was involved in an attack against other inmates while incarcerated in a state correctional facility. The State charged Wilson with assault and battery[3] and filed a notice of intent under Rule 404(b) to admit evidence of Wilson's gang affiliation. *Wilson*, 159 Idaho at 413, 361 P.3d at 1276. "After weighing the prejudicial and probative values of the evidence, the court admitted the evidence for the limited purpose of establishing the plan, preparation and motive" under Rule 404(b). *Wilson*, 159 Idaho at 413, 361 P.3d at 1276. During trial, the State offered the testimony of two correctional facility employees to explain the "strict procedural safeguards in place to prevent individuals affiliated with certain Security Threat Groups from having physical contact with individuals affiliated with other Security Threat Groups" and "to explain why one group of inmates would stage an attack against a separate group of inmates." *Wilson*, 159 Idaho at 414, 361 P.3d at 1277. The jury found Wilson guilty, and he appealed, challenging the district court's ruling that the probative value of his gang affiliation was not substantially outweighed by the danger of undue prejudice under Rule 403. *Wilson*, 159 Idaho at 414-15, 361 P.3d at 1277-78. On appeal, this Court held that the trial court did not abuse its discretion by admitting evidence of Wilson's gang affiliation because the court both properly weighed the potential for prejudice against the evidence's probative value and took steps to mitigate the potential for unfair prejudice. *Id.* at 417, 361 P.3d at 1280; *see also State v. Almaraz*, 154 Idaho 584, 591, 301 P.3d 242, 249 (2013) (holding testimony of gang membership admissible under Rule 404(b) to demonstrate motive including testimony of "how something as simple as wearing a red shirt could trigger a rival gang member to react with violence if he felt disrespected").

---

(5) "which resulted in a physical injury to any person or a disturbance of the public peace." *See* I.C. § 18-6401 (defining riot).

[3] Although the nature of the charges is different in *Wilson*, Castro expressly takes the position that the crimes of battery and riot are similar, stating that "the battery statute does not really care why one person strikes another, just that [he] intended to strike that other person. The same appears to be true of the riot statute." (Citation omitted.)

We hold that the district court did not abuse its discretion by admitting testimony about Castro's gang affiliation. The court acknowledged the potential for unfair prejudice, conducted the balancing test to determine the evidence's probative value was not substantially outweighed by the danger of unfair prejudice, and mitigated any potential for unfair prejudice by twice instructing the jury only to consider evidence of Castro's gang affiliation for purposes of determining motive and intent. Although Castro asserts the State was not required to prove his intent, we do not need to address that issue because the evidence remains admissible for purposes of determining Castro's motive. The Idaho Supreme Court has held that "evidence of motive is relevant when the existence of a motive is a circumstance tending to make it more probable that the person in question did the act." *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014) (internal quotation marks omitted). "Motive is a well-accepted method of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character." *Id.* (internal quotation marks omitted).

We also reject Castro's assertion that "the negative connotations society associates with gangs . . . is so pervasive that . . . the limiting instruction . . . did not sufficiently ameliorate the risk of undue prejudice." In support of this assertion, Castro cites *State v. Johnson*, 148 Idaho 664, 227 P.3d 918 (2010). In that case, the State charged Johnson with lewd and lascivious conduct for molesting his minor daughter. *Id.* at 666, 227 P.3d at 920. During trial, the district court admitted evidence that Johnson had molested his eight-year-old sister when he was a teenager. *Id.* at 666-67, 227 P.3d at 920-21. The jury convicted Johnson, and he appealed. *Id.* On appeal, the Idaho Supreme Court held that evidence of Johnson's prior molestation of his sister was irrelevant. *Id.* at 669, 227 P.3d at 923. Further, the Court held that the court's limiting instruction did not prevent the error from prejudicing Johnson. *Id.* at 670, 227 P.3d at 924. The Court noted that "evidence of prior sexual misconduct with young children is so prejudicial that there is a reasonable possibility this error contributed to Johnson's conviction. . . . The danger is too great in this sex-abuse case that the jury may have believed the prior misconduct demonstrated [Johnson's] deviant character traits." *Id.*

This case is distinguishable from *Johnson*. The Rule 404(b) evidence admitted in this case is substantially different from the evidence admitted in *Johnson.* Unlike the evidence of uncharged misconduct in *Johnson*, the evidence of Castro's gang affiliation did not demonstrate specific instances of prior similar misconduct. Rather, the evidence simply showed that the riot

6

occurred between two rival gangs and that Castro was affiliated with one of those gangs and, as a result, was motivated to participate in the riot. Further, we decline to conclude, as Castro urges, that evidence of gang affiliation is comparable to evidence of prior incidents of child molestation for purposes of evaluating prejudice. Accordingly, we hold the district court's limiting instructions ameliorated any risk of unfair prejudice.

## III.

## CONCLUSION

The district court did not abuse its discretion by admitting evidence of Castro's gang affiliation. As a result, we affirm the judgment of conviction.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.