IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48124

| STATE OF IDAHO, | ) | |
| | ) | Filed: April 19, 2022 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| TRAVIS RAY LEAVITT, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Stevan H. Thompson, District Judge.

Judgment of conviction for rape, vacated, and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Travis Ray Leavitt appeals from his judgment of conviction for rape, Idaho Code § 18-6101(2). Leavitt asserts the district court erred by admitting impermissible propensity evidence in violation of Idaho Rule of Evidence 404(b). We vacate the judgment of conviction and remand the case.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, Leavitt worked on a ranch in Challis where A.M. also worked and lived with her parents. A.M., who was seventeen years old at the time, confided in a friend, R.S., that A.M. had sexual intercourse with Leavitt. R.S. informed her mother, who contacted law enforcement. During an investigation, A.M. initially denied she had a sexual encounter with Leavitt. Later, however, A.M. acknowledged the encounter and stated that Leavitt's penis entered her vagina; she told him no; but he continued having sex with her.

1

The State filed a complaint alleging that Leavitt forcibly raped A.M. and that he is a persistent violator. During the preliminary hearing, A.M. testified. Following her testimony, the State amended its allegations to assert, alternatively, that Leavitt committed rape based on the age difference between him and A.M. *See* I.C. § 18-6101(2) (defining rape to include penetration involving victim who is sixteen or seventeen and perpetrator who is three or more years older). At the conclusion of the hearing, the magistrate court found insufficient probable cause to support the forcible rape charge but found probable cause for rape based on A.M.'s and Leavitt's ages and bound Leavitt over to the district court.

## A.     Ruling on State's Rule 404(b) Notice

The case proceeded to a jury trial in January 2020 on the rape charge based on A.M.'s and Leavitt's ages. The day before trial, the State filed a notice of intent to admit evidence under Rule 404(b). Specifically, the State sought to admit a 2001 decree and order of commitment stating Leavitt had committed lewd and lascivious conduct, I.C. § 18-1508, when he was a juvenile; a 2006 judgment convicting him of rape, I.C. § 18-6101(1); and "evidence of facts and circumstances" related to these convictions.[1]

On the first day of trial, the district court briefly addressed the State's Rule 404(b) notice. The court noted that the State filed its notice "fairly late." Regardless, the court reserved its ruling on the notice until it had "heard enough evidence to put some context to what the state's trying to offer." The court also advised the parties that it would have a hearing the next morning, on the second day of trial, to "more fully address" the State's notice.

Thereafter, on the first day of trial, the State presented the testimony of a clinical counselor. This counselor testified about the seven "stages of grooming" which include: (1) identifying and targeting the victim, (2) gaining trust and access, (3) playing a role in the victim's life, (4) isolating the victim, (5) creating secrecy, (6) initiating sexual contact, and (7) controlling the relationship. The State also presented the testimony of a forensic interviewer, who had interviewed A.M. and who testified about grooming behavior.

The next morning, before the second day of trial and outside the jury's presence, the district court addressed the State's Rule 404(b) notice. The prosecutor explained the reason for the timing

---

[1]     The State also attached to the notice copies of the 2001 decree and order of commitment and the 2006 conviction. The record suggests the State was aware of these convictions as early as when it filed the information alleging Leavitt is a persistent violator.

2

of the notice, stating that "in speaking with the witnesses, preparing for their testimony today, some new information came out, which I was not aware of before." Describing this information, the prosecutor stated that: (1) Leavitt "made a comment [to A.M. and her father] about how he wasn't able to have a firearm because he was a felon"; (2) on a different occasion, Leavitt was "bragging to [A.M. and R.S.] how he had spent 12 years in prison, talked about how he got addicted to drugs while he was in prison, and he mentioned that he was a sex offender, and that's why he'd been to prison"; (3) A.M.'s family members looked [Leavitt] up [online], found out that he went to prison [and that] it was a sex crime, statutory rape crime"; and (4) Leavitt told A.M. that he had a "hit list," which included R.S. and others, and that "he was not going back to prison."

In support of admitting this evidence under Rule 404(b), the prosecutor argued:

> [T]his fits this pattern of [Leavitt] and his history. He has preyed upon young children since he was a teenager. He's got the juvenile charges, the sexual crimes, where he preyed upon younger children. He then in his 20s has statutory rape with a young girl, gets charged, doesn't think it's a problem, and does 12 years of time on it, according to what he told [A.M.]. And now he gets out, and he continues this same pattern of behavior.

Further, the prosecutor argued the proffered evidence "shows a common scheme or plan"; "corroborates the rest of the testimony"; and "flows in with the grooming behavior." In response, Leavitt objected to the State's Rule 404(b) notice as untimely and argued the evidence did not show a plan or scheme, was not relevant to whether Leavitt had sex with A.M., and was unfairly prejudicial.

Ruling on the motion, the district court rejected Leavitt's objection to the State's Rule 404(b) notice as untimely. Specifically, the court ruled:

> There is a requirement [u]nder Rule 404(b), a reasonable notice. . . . [T]hat contemplates reasonable notice of the state intending to present evidence that's maybe outside the scope of . . . this case, that outside what the testimony would have been presented in this case from the victim, from the fact witnesses, information that was disclosed in discovery regarding witness statements and so forth, that 404(b) kind of contemplates in that notice requirement that if [the State is] going to present something outside of that, other events unrelated to this event, that there's a requirement of reasonable notice, that you can be aware of that and confront it.

Based on this reasoning, the district court found Leavitt was aware of the identity of the State's witnesses and "had some idea of what their testimony would be" and that those witnesses would be "testifying to facts that happened regarding this case and these events, not some other situation unknown to defendant." Accordingly, the court concluded that, under such circumstances

3

"maybe that notice requirement is not as urgent"; "there's a reason to excuse [the] notice requirement"; and "there's not necessarily an unfair prejudice by the late notice."

Addressing the admissibility of the evidence, the district court excluded "actual evidence of what [Leavitt's] prior convictions were." The court, however, stated that it would allow the witnesses to testify "fully and freely as to what [Leavitt] allegedly said to them in this case." The court explained that this testimony would provide "context and explain[] what kind of grooming behavior may or may not have been happening" and "why there wasn't an immediate disclosure" by A.M. of the sexual encounter with Leavitt. Finally, the court found that the testimony is "obviously extremely prejudicial testimony" but, nonetheless, concluded "the prejudicial effect of this [testimony] does not substantially outweigh the probative value." After ruling, the court granted Leavitt's request to have a "standing objection."

## B.     Testimony About Leavitt's Criminal History

Thereafter, the trial resumed, and several witnesses' testimony referenced Leavitt's criminal history. A.M. testified that: (1) Leavitt told her and her father that Leavitt "couldn't own a gun because he was a felon"; (2) he was "bragging" to her and to R.S. that he "couldn't own a gun because he had been a felon and just recently got out of prison"; (3) she, R.S., and their mothers "googled [Leavitt] and found out what he'd done"; and (4) Leavitt said that he "had a hit list," "would not be going back to prison," and "would take [anybody] out" who "tried to take him back [to prison]."

R.S. also testified about Leavitt's criminal history. Specifically, R.S. testified that Leavitt told her and A.M. "he cannot own any guns because he is a felon and he's a previous sex offender." Finally, R.S.'s mother testified that R.S. had told her mother that Leavitt "had been in prison for some time, and [R.S.] thought it had something to do with statutory rape, something along those lines."

In addition to the testimony of A.M., R.S., R.S.'s mother, the clinical counselor and the forensic interviewer, the State also presented the testimony of a ranch employee, A.M.'s father, and two sheriff's department employees who investigated the alleged rape. In his defense, Leavitt presented the testimony of his sister. After deliberating, the jury convicted Leavitt of rape based on A.M.'s and Leavitt's ages.

Leavitt timely appeals.

4

## II.

## ANALYSIS

On appeal, Leavitt argues the district court erred "by allowing the State to present evidence that Leavitt was a convicted sex offender who spent time in prison." Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." I.R.E. 404(b)(1). Rule 404(b) prohibits the introduction of evidence of a crime, wrong, or other act--other than the charged crime--if that evidence's probative value is entirely dependent on its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Evidence of other bad acts, however, may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012). If that evidence proves "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," it may be admissible. I.R.E. 404(b)(1).

### A. Notice

In criminal cases, the State must provide reasonable notice that it intends to offer evidence of other bad acts, i.e., of a crime, a wrong, or an act other than the charged crime. I.R.E. 404(b)(2). Specifically, Rule 404(b) provides that the State must "file and serve reasonable notice of the general nature of any such evidence the prosecutor intends to offer at trial" and "do so reasonably in advance of trial." I.R.E. 404(b)(2). Compliance with Rule 404(b)'s notice requirement is mandatory and a condition precedent to the admission of evidence of other bad acts. *State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008). The requirement is intended to reduce surprise and promote the early resolution of issues of admissibility. *Id.* If the State fails to comply with the pretrial notice requirement of Rule 404(b), then the evidence of other acts is inadmissible. *Sheldon*, 145 Idaho at 230, 178 P.3d at 33. The State's lack of pretrial notice, however, may be excused for "good cause shown." I.R.E. 404(b)(2)(B).

Leavitt challenges the district court's ruling that the State's Rule 404(b) notice was not untimely because the State was not seeking to admit evidence of "other events unrelated to this event," and Leavitt was "aware of 'who all these witnesses were.'" Leavitt contends the court "misread" Rule 404(b) by considering which witness would provide the Rule 404(b) evidence. In support, Leavitt cites *Sheldon*, 145 Idaho 225, 178 P.3d 28.

5

In that case, the State charged Sheldon with trafficking in methamphetamine. *Id.* at 227, 178 P.3d at 30. During an investigation, Sheldon admitted to a detective that Sheldon had previously "dealt smaller quantities of methamphetamine," and the detective "wrote a report after the interview indicating Sheldon had told [the detective] [Sheldon] had dealt drugs in the past." *Id.* at 227, 229, 178 P.3d at 30, 32. The case proceeded to trial, but the State never notified Sheldon of its intent to offer any evidence of other bad acts under Rule 404(b). *Sheldon*, 145 Idaho at 227, 178 P.3d at 30. At trial, the detective testified that Sheldon had told the detective Sheldon was involved in dealing methamphetamine in the past. *Id.* at 229, 178 P.3d at 32. After the jury convicted Sheldon, he appealed, challenging the trial court's admission of the detective's testimony about Sheldon's prior bad acts of dealing drugs.

On appeal, the Idaho Supreme Court addressed the State's failure to provide Sheldon pretrial notice under Rule 404(b) of the detective's testimony. *Sheldon*, 145 Idaho at 230, 178 P.3d at 33. It noted the purpose of Rule 404(b) is "intended to reduce surprise and promote early resolution on the issue of admissibility." *Sheldon*, 145 Idaho at 230, 178 P.3d at 33 (quotation marks omitted). The Court ruled that compliance with Rule 404(b) "is mandatory and a condition precedent to admission of other acts evidence" and that Sheldon's statements to the detective who investigated the case were inadmissible because the State failed to comply with Rule 404(b)'s notice provisions. *Sheldon*, 145 Idaho at 230, 178 P.3d at 33. Accordingly, the Court vacated Sheldon's conviction and remanded the case. *Id.* at 231, 178 P.3d at 34.

The *Sheldon* Court did not directly address a scenario in which the trial court ruled--as the district court did in this case--that compliance with Rule 404(b)'s notice requirement is excused (or not "as urgent") when the evidence of bad acts is admitted through the testimony of fact witnesses to the alleged crime who are known to the defendant. As Leavitt notes, however, the facts in *Sheldon* suggest that the defendant's knowledge of the identity of the witness who will testify about bad acts does not excuse mandatory compliance with Rule 404(b)'s notice requirement. Conceivably, Sheldon was aware pretrial both of the detective's identity and his written report of Sheldon's admission to prior drug dealing, and yet, the *Sheldon* Court held that notice of the detective's testimony about this admission was still mandatory under Rule 404(b).

On appeal, the State does not respond either to Leavitt's reliance on *Sheldon* or to the substance of the district court's ruling. Instead, the State concedes it failed to give adequate pretrial notice of its intent to admit evidence under Rule 404(b). It argues, however, that the court correctly

excused its lack notice for good cause because the prosecutor was not aware of the "new information" "before the second day of trial," and the State "cannot disclose information that it does not yet have."

In support, the State notes Leavitt's reliance on *State v. Clark*, 135 Idaho 255, 16 P.3d 931 (2000), for the definition of "good cause" and argues that under *Clark*--if it applies--"the complete lack of prejudice to Leavitt is an appropriate consideration for excusing the lack of pretrial notice." *Clark*, however, does not interpret the meaning of "good cause" in the context of Rule 404(b). Rather, *Clark* discusses the meaning of good cause in the context of I.C. § 19-3501, which provides for statutory speedy trial rights. *Clark*, 135 Idaho at 259, 16 P.3d at 935. We decline to construe *Clark* as addressing the meaning of good cause for purposes of Rule 404(b), and the State cites no other supporting authority addressing the meaning of good cause in the context of Rule 404(b).

Even assuming without deciding, however, that the State's discovery of bad acts evidence after the trial commenced constitutes good cause under Rule 404(b) to excuse the State's failure to comply with the pretrial notice requirement,[2] the record in this case does not support the State's position. Specifically, the record does not show the State only discovered the witnesses' knowledge and statements about Leavitt's criminal history after the trial had already commenced. The State argues on appeal that the prosecutor was not aware of the bad acts evidence until "before the second day of trial." In support, the State relies on the prosecutor's statement to the district court on the second morning of trial that "in speaking with witnesses, preparing for their testimony today, some new information came out, which I was not aware of before." This statement, however, does not disclose *when* exactly the prosecutor spoke with the witnesses in preparation for their testimony. On appeal, the State simply assumes it did not learn about Leavitt's statements to the witnesses until after trial commenced but before the second day of trial. The record, however, does not support the State's assumption. Although the prosecutor refers to "today," whether that word modifies the prosecutor's possible preparation on that day and before the second day of trial began or the testimony of A.M., R.S. and R.S.'s mother, all of whom testified that second day of trial or both is unclear. For that reason, the State has failed to establish good cause

---

[2]     Although the State did not cite any authority addressing the meaning of "good cause" in the context of Rule 404(b)'s notice requirement, at least one jurisdiction has found good cause to excuse the pretrial notice where the government only learned of the bad acts evidence during a witness interview the night before trial. *United States v. Lopez-Gutierrez,* 83 F.3d 1235, 1241 (10th Cir. 1996).

to excuse its acknowledged failure to comply with the pretrial notice requirement. *See* I.R.E. 404(b)(2)(B) (requiring showing of good cause to excuse pretrial notice). Moreover, the State's belated pretrial notice stating it intended to introduce "evidence of facts and circumstances" of Leavitt's prior convictions suggests the State may have known something about those facts and circumstances, such as Leavitt's statements to the witnesses, before trial began, but it did not disclose their nature in its written notice.

The district court never expressly stated it found "good cause" to excuse the State's late Rule 404(b) notice. Rather, the record shows the court excused the State's compliance with the mandatory requirement of reasonable pretrial notice because Leavitt made the challenged statements to witnesses to his alleged crime, and he knew the identity of those witnesses. As a result, the court reasoned Rule 404(b) notice was not "as urgent" and "there's not necessarily an unfair prejudice by the late notice." This reasoning improperly placed the burden on Leavitt to surmise pretrial what the State's bad acts evidence would be and to prepare to defend against that evidence. Imposing that burden on Leavitt, however, is contrary to the purpose of Rule 404(b) to provide reasonable notice to the criminal defendant of bad acts evidence to avoid surprise and to ensure early resolution of the evidence's admissibility. *See Sheldon*, 145 Idaho at 230, 178 P.3d at 33 (noting purpose of Rule 404(b) is to reduce surprise and promote early resolution of issues of admissibility).

## B.      Admissibility

Even if good cause excused the State's conceded failure to provide reasonable pretrial notice under Rule 404(b)(2), the evidence that Leavitt was a convicted sex offender who spent time in prison was inadmissible under Rule 404(b)(1). When determining the admissibility of evidence under Rule 404(b), the trial court must first determine whether sufficient evidence of the other acts exists such that a reasonable jury could believe the conduct actually occurred. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).

On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Id.* We exercise free review, however, of the trial court's relevancy determination. *Sheldon*, 145

Idaho at 229, 178 P.3d at 32. The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

### 1.    Relevance

Leavitt challenges the district court's ruling that evidence that he was a convicted sex offender who spent time in prison is relevant to the State's "theory of grooming and a plan" and to A.M.'s credibility. In response, the State argues evidence of Leavitt's criminal history is "highly relevant to show A.M. was a credible witness, to explain her delayed disclosure, to rebut Leavitt's claims that she was a liar, and to show that Leavitt was grooming her."

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *State v. Stewart*, 161 Idaho 235, 237, 384 P.3d 999, 1001 (Ct. App. 2016). Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

We agree with Leavitt that evidence that he was a felon and convicted sex offender, who had spent time in prison and who could not possess a firearm, is not relevant to any material issue of fact concerning the charge of rape. This evidence is not relevant to any effort by Leavitt to groom A.M. Although the State presented testimony about "grooming behavior," it did not present any evidence to support the State's proposition that a defendant's grooming behavior includes his disclosure of his criminal history, i.e., his prior incarceration and the reason therefore. Rather, the State only presented the clinical counselor's testimony that a perpetrator, who grooms a victim, may make comments about *going to* prison to control the perpetrator's relationship with the victim. For example, the counselor testified:

> [O]ftentimes [the perpetrator] know[s] that if [the abuse] is revealed, there's a good chance they'll go to jail. So they start to put the responsibility back onto the victim, [its] when they start . . . to cry; say, if I get revealed, if this comes out, I'll go to jail.

This and other related testimony, however, does not support the State's proposition that a defendant's *past* criminal history is evidence of grooming behavior. That Leavitt was a felon who had been imprisoned previously for a sexual offense and could not possess a firearm does not tend to make it more probable that he "groomed" A.M. in this case.

We also disagree that Leavitt's prior convictions showed a "pattern of behavior" as the prosecutor argued to the district court. The State did not admit or proffer any evidence of the facts and circumstances of Leavitt's prior convictions to indicate those convictions included grooming behavior or some other commonality with the rape charge in this case.

We acknowledge that A.M.'s testimony that Leavitt said that he had a "hit list," "would not be going back to prison," and "would take [anybody] out" who "tried to take him back [to prison]" may be evidence of grooming behavior (according to the clinical counselor's description of such behavior). A.M.'s reference to Leavitt's criminal history, however, tainted this testimony with propensity evidence. Namely, A.M. did not simply testify Leavitt told her he intended to avoid prison, but rather, she testified about Leavitt's intent to avoid going *back* to prison. This reference to the fact that Leavitt had *already* been in prison unnecessarily emphasized improper propensity evidence of Leavitt's criminal history, particularly when coupled with the witnesses' numerous statements about Leavitt being a felon who had previously been in prison.

The State's argument that Leavitt's criminal history is relevant to A.M.'s credibility, i.e., "to explain her delayed disclosure" and "to rebut Leavitt's claims that she is a liar," is not persuasive. In support of this argument, the State asserts that Leavitt made threats towards people about whom A.M. cared; "coming from anyone else, such statements might sound silly, or at worst like idle threats"; but Leavitt "package[d] these threats with the highly relevant details that gave them teeth: he also disclosed to A.M. that he was an ex-con and a sex offender." That Leavitt was a convicted sex offender who spent time in prison and who could not possess a firearm, however, did not make A.M. per se a more credible witness. In particular, Leavitt's criminal history did not directly pose any threat to A.M. for disclosing the sexual encounter and, for that reason, Leavitt's criminal history does not tend to make it more probable that A.M. would delay disclosing or lie about the encounter, as the State argues. While the fact that Leavitt had a "hit list" and intended to avoid going to prison may have enhanced A.M.'s credibility about why she delayed disclosing or lied about the encounter, this testimony was commingled with and thereby tainted by inadmissible propensity evidence, i.e., Leavitt's irrelevant criminal history, as discussed above.

10

Moreover, to the extent Leavitt's criminal history may have been relevant to explain A.M.'s initial denial of the sexual encounter, only those statements A.M. heard about Leavitt's criminal history would be relevant. As Leavitt notes, R.S. and her mother's knowledge of Leavitt's criminal history had no bearing on A.M.'s credibility.

### 2.     Probative value

Finally, the probative value of Leavitt's criminal history to prove he raped A.M. is substantially outweighed by the danger of unfair prejudice. The evidence of Leavitt's criminal history is not relevant for any nonpropensity purposes and the risk of unfair prejudice was substantial. "The prejudicial effect of [character evidence] is that it induces the jury to believe the accused is more likely to have committed the crime on trial because he is a man of criminal character." *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (quoting *State v. Wrenn*, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978)). Character evidence, therefore, takes the jury away from their primary consideration of the guilt or the innocence of the particular crime on trial. *Id*. That Leavitt made statements about being a convicted felon who could not own a firearm and spent time in prison for a sex offense is not relevant for the jury to decide whether Leavitt committed rape in June 2020. Moreover, that the district court did not allow the State to bring in "actual evidence" of Leavitt's convictions does not negate the prejudicial effect of admitting numerous witnesses' testimony about Leavitt's criminal history. Accordingly, we reject the State's argument that there was "a complete lack of prejudice to Leavitt" as a result of its failure to comply with Rule 404(b), and we hold the court abused its discretion by concluding the prejudicial effect of the testimony did not substantially outweigh the probative value. The district court's conclusion is inconsistent with the court's finding that the testimony is "obviously extremely prejudicial testimony."

In summary, we hold that the district court erred in numerous respects in admitting evidence under Rule 404(b) of Leavitt's criminal history. The district court failed to rule that good cause excused Leavitt's late notice of its intent to offer Rule 404(b) evidence of Leavitt's criminal history, and the record does not support the State's assertion that the prosecutor did not discover this information until after trial had already commenced. Regardless, the witnesses' testimony about Leavitt's criminal history is not relevant either to his purported grooming behavior or to A.M.'s credibility. To the extent, Leavitt's "hit list" and intention to avoid going to prison is relevant for these purposes, that testimony was tainted with reference to the propensity evidence of Leavitt's prior incarceration and the reason for that incarceration. Finally, the prejudicial effect

of the testimony about Leavitt's criminal history, which the district court found to be "extremely prejudicial," did not outweigh the probative value of that testimony.

## C. Harmless Error

The State concedes the testimony of R.S.'s mother that R.S. said Leavitt "had been in prison for some time" and "she thought it had something to do with statutory rape" was improperly admitted. The State acknowledges that this statement "went beyond the district court's ruling," which excluded "actual evidence of what [Leavitt's] prior convictions were," and that the "testimony that R.S. had discovered Leavitt was previously convicted of statutory rape was simply irrelevant." The State, however, contends the testimony was "fleeting" and harmless because "the probative force of the one statement from [R.S.'s mother] against all of the other properly admitted evidence in the record, shows the error was harmless." The State, however, does not argue that the admission of Leavitt's criminal history--other than the statements by R.S.'s mother--is harmless. Specifically, the State does not argue that A.M.'s testimony that Leavitt could not own a gun, was a felon, and recently got out of prison and that R.S.'s testimony that Leavitt could not own a gun, was a felon, and is a "sex offender" was harmless. Because we hold this other evidence of Leavitt's criminal history was inadmissible and because the State does argue this other evidence is harmless, we do not address the State's harmless error argument.

## III.

## CONCLUSION

The State failed to comply with the notice requirement of Rule 404(b); good cause did not excuse this failure; and as a result, the district court erred by allowing admission of evidence of Leavitt's criminal history. Furthermore, even assuming the State had not failed to comply with the mandatory notice requirement, evidence of Leavitt's criminal history is not relevant for any purpose other than his propensity to commit rape, and the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Accordingly, the district court erred by admitting impermissible propensity evidence in violation of Rule 404(b), and we vacate the judgment of conviction and remand the case.

Judge HUSKEY **CONCURS**.

Chief Judge LORELLO **CONCURS IN THE RESULT**.

12